In the Matter of the Readjustment, Modification and Reorganization of the Rights of the Holders of Mortgage Investments Guaranteed by LAWYERS' WESTCHESTER TITLE & MORTGAGE COMPANY, and Designated as Issue 4-5298.

Supreme Court, Special Term, Westchester County, April 14, 1937.

*Leonard Klaber,* for the certificate holder, Marie Martin.

*William F. Bleakley,* for the Trust Company of Northern Westchester and Hudson-Harlem Valley Title and Mortgage Company.

SYME, J. This is an application by one of the certificate holders in the above-mentioned guaranteed mortgage series to review the election of successor trustees, and to declare one of them, to wit,

the Trust Company of Northern Westchester, disqualified and incompetent to act as such trustee.

The petitioner also asks for such other and further relief as may be necessary to protect the rights and interests of the beneficiaries of the trust.

It is contended by counsel for both the Trust Company of Northern Westchester and the Hudson-Harlem Valley Title and Mortgage Company that this court has no power to bar an elected trustee from taking office, and that the court's only power is to remove a trustee for cause after he has taken office.

At the time of the oral argument of this motion none of the newly-elected trustees had filed their acceptance of trust as required by the declaration of trust.

An examination of the records in the county clerk's office discloses that on April 12, 1937, an acceptance of this trust duly executed by all three of the newly-elected trustees was duly filed.

This court must, therefore, under the general prayer for other and further relief, treat this application as one to remove for cause the Trust Company of Northern Westchester.

The election was held on March 19, 1937, and pursuant to the report thereof heretofore filed in the county clerk's office, it appears that Charles A. Voss, Martin J. Birmingham and the Trust Company of Northern Westchester received the highest number of votes cast, and are, therefore, the newly-elected successor trustees, in this series.

No question is raised as to the election, or right to serve, as against the other two newly-elected trustees, Voss and Birmingham.

The grounds of the challenge against the trust company may be summarized under three subdivisions, to wit:

(1) That it is disqualified because there is now existing a so-called servicing contract between this trust estate and the Hudson-Harlem Valley Title and Mortgage Company, which is concededly affiliated with, or a subsidiary of, the Trust Company of Northern Westchester, both having the same president (Henry F. Freund) and other identical officers, and in many instances identical directors.

(2) That it is not a competent trustee, because it is a banking corporation, organized for profit, and cannot validly undertake the duties of a trustee, without compensation (as it must do under the declaration of trust herein), because such act would be *ultra vires;* and

(3) That it procured its election by improper methods in the solicitation of proxies which it voted at such election so as to insure its own election as one of the new trustees.

Considering these objections in the order in which they are here enumerated, there is no serious dispute of any of the facts relating to the first objection.

It is conceded that Henry F. Freund is the president of both the Trust Company of Northern Westchester and the Hudson-Harlem Valley Title and Mortgage Company.

Likewise that the Hudson-Harlem Valley Company is an affiliate of the trust company.

Likewise, that there is now in existence between the Hudson-Harlem Valley Company and this trust estate a so-called servicing contract, by which the Hudson-Harlem Company undertakes to service the assets of the estate, both real and personal, for a compensation computed upon a " cost-plus percentage " basis.

It is self-evident that one of the most important duties of a trustee of the estate, under such a contract, would be to supervise or check the expenditures of the contracting service agent, so as to insure keeping " the cost " to the minimum, and thus insure a greater return to the certificate holders.

Under the present set up, we have the paradox of one of the trustees who is charged with the duty of administering the estate at the least possible cost, being also a controlling factor in the servicing agent, which can only increase its revenue, and, thus, its profits, by the additional income it can derive from the trust estate.

It does not require much conjecture to decide in which direction a fiduciary would lean, when placed between two horns of such a dilemma, where, on the one hand, he would be serving this trust with no possible hope or opportunity of compensation, and on the other where the profit of his affiliate would be certain to be increased by such additional expenditure as he might succeed in having his trust estate incur.

Incidentally, this is the identical contract which has heretofore been considered by this court in connection with some of the other series, in which it has been pointed out that the expenditures incurred thereunder are reducing the assets of these estates.

The history of this so-called servicing contract is of peculiar interest in connection with the present motion.

The contract was originally executed between the old trustees and the " Title & Mortgage Company of Westchester County," which was a company organized by the Superintendent of Insurance, all of the stock being owned by the Superintendent for the guarantor mortgage company.

This meant that all profits coming from the management and servicing of certificated properties and mortgages would eventually

534

accrue to the certificate holders through the building up of funds from which the claims were to be paid.

Under such circumstances the schedule of charges was not of any great importance, because the money would eventually reach the certificate holders.

In April, 1936, such contract was assigned to the Hudson-Harlem Valley Title and Mortgage Company, with the result that the certificate holders were immediately stripped of all possible chance of benefit from the profits, which were thenceforth diverted into the coffers of the privately owned servicing company.

That such servicing contract was unquestionably a profitable one is best demonstrated by the fact that the Hudson-Harlem Valley Company paid $40,500 to procure the assignment and control thereof.

This is a typical illustration of a trustee trying to serve two conflicting interests at the same time, one of which must profit at the expense of the other.

No court should, for a single instant, place its stamp of approval on any such situation, nor permit it to continue after it is once discovered to exist.

In *Pyle* v. *Pyle* (137 App. Div. 568; affd., 199 N. Y. 538) it was held:

" It is a fundamental rule relating to the acts of a testamentary trustee, that he *must not only act for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him, for himself.*

" He owes an undivided duty to his beneficiary, *and he must not, under any circumstances, place himself in a position whereby his personal interest will come in conflict with the interest of his cestui que trust.* (Pom. Eq. Juris. §§ 1075–1077; Chaplin on Express Trusts & Powers, § 193; *Matter of Hirsch, No. 1,* 116 App. Div. 367; affd., 188 N. Y. 584.)

" The purpose sought to be secured by this rule of law *is to require a trustee to assume a position where his every act is above suspicion and the trust estate, and it alone, can receive, not only his best services, but his unbiased and uninfluenced judgment.*

" When he has acted otherwise, *or when he has placed himself in such a position that his personal interest has or may come in conflict with his interest as trustee, then, so far as I have been able to discover, the court never hesitates to remove him.*

" Under such circumstances, *the court does not stop to inquire whether the transactions complained were fair or unfair. It stops the inquiry when the relation is disclosed.* (*Munson* v. *S., G. & C. R. R. Co.,* 103 N. Y. 58.) "

In *Munson* v. *S., G. & C. R. R. Co.* (103 N. Y. 58) Munson was a director in two contracting corporations. The court said (p. 74):

" The law permits no one to act in such inconsistent relations. *It does not stop to inquire whether the contract or transaction was fair or unfair. It stops the inquiry when the relation is disclosed, and sets aside the transaction, or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case.*

*" It prevents frauds by making them as far as may be impossible, knowing that real motives often elude the most searching inquiry,* and it leaves neither to judge nor jury the right to determine upon a consideration of its advantages or disadvantages, whether a contract made under such circumstances shall stand or fall."

In *Crummey* v. *Murray* (130 Misc. 378) there was a trust estate which owned stock in two different banks. Two of the trustees used the trust stocks to have themselves elected as officers of such banks, each trustee selecting a different bank, and being elected to an office which paid a salary.

They sought to justify such acts by claiming that in becoming officers of the banks, they were better serving their trust, but the court rejected this, saying (at p. 382): " Similarly here the position of Francis W. Murray, Jr., as president, director, and stockholder of the National Bank of Orange County *would seem to place him in a position ' whereby his personal interest may or has come directly in conflict with and to a certain extent antagonistic to his interest as trustee.'* His desire to retain the position and the salary which goes with it may influence him to dispose to friendly interests stock held by the estate which otherwise might be voted in such manner as to cause him embarrassment, if not more substantial discomfiture. Likewise, the position of Merritt, as president of the Goshen Bank and as director and stockholder of both banks *may well lead to a conflict between his individual and his representative interests. Obviously the plaintiffs are entitled to have their property administered by trustees who are entirely at the service of their trust. They may well demand that these functionaries, acting in highly fiduciary capacity, be sterling men, fit and conscientious, and, like Cæsar's wife, at no time the proper subject of doubt or suspicion.*"

That the foregoing decisions have received legislative recognition and approval is demonstrated by the recently enacted article 4-A of the Real Property Law (Laws of 1936, chap. 900, in effect June 8, 1936), which, in its opening section, provides:

" § 124. Purpose and application of article. It is the purpose of the Legislature, in enacting this article, to provide for the regulation and supervision of the appointment, creation, agreements, acts, conduct, practices, and proceedings of trustees, bondholders' protective committees, depositaries, management companies, voting trustees and other persons administering, holding in custody or otherwise concerned with real estate mortgages and interests therein, *to the end that such interests will be property conserved, administered and ultimately liquidated in the public interest.*"

The article then proceeds to prohibit the identical situation hereinbefore discussed by providing:

(A) " Nor shall any trustee or any officer, director or employee of the trustee be an officer, director, partner or an employee of or have any financial interest in any firm, agency, association or corporation engaged by such trustee as his or its representative, or agent in the management or supervision of or the collection of rents, and income from any property affected or covered by the mortgage held by the trustee under a trust indenture, deed of trust, or other similar instrument." (Real Prop. Law, art. 4-A, § 127, subd. 2.)

(B) " *No trustee or committee shall employ as a managing agent any management company or corporation any of whose officers, directors or stockholders, are also officers, directors or employees of the trustee.*" (Real Prop. Law, art. 4-A, § 130-b, subd. 2.)

Unfortunately, under the section of definitions, " mortgages, the payment of which is guaranteed by any title and mortgage guaranty corporation or investment company," are excluded from the benefits of such article (Real Prop. Law, art. 4-A, § 125).

While it is difficult to comprehend the justification for excepting this particular type of mortgage investments from the benefit of such salutary statutory protection, nevertheless it is indicative of how far the Legislature has gone in protecting all other classes of mortgage investments, and should have great persuasive weight in inducing this court of equity to extend, as far as possible, a similar protection to the mortgage investments here involved, particularly where the guaranty is as worthless as it unquestionably is in the present instance.

Counsel for the trust company and the Hudson-Harlem Valley Company argues that there is no proof that the new trustees will continue the servicing contract.

The complete answer to this is that the contract is now in full force and effect. It existed before the new trustees were elected; and one of the officers or affiliates of the servicing company should

not be permitted to act as a trustee charged with the duty of enforcing such contract in the interests of the certificate holders.

The contention of counsel, who represents both the trust company of Northern Westchester and the Hudson-Harlem Valley Title and Mortgage Company on this motion, is that the court has no jurisdiction to pass judgment on the qualifications of trustees under the provisions of the declaration of trust.

This necessitates an analysis thereof, in so far as it relates to the matters here under consideration:

Article VI provides as follows:

" (A) The Trustees shall be three (3) in number. The Trustees herein originally named shall hold office until their successors shall have been selected and have accepted this trust as hereinafter provided, except that the Certificate Holders may at any time by majority vote remove any Trustee, *and the court may AT ANY TIME, upon due cause therefor being shown, remove any Trustee.*

" (B) Successor Trustees shall be elected by the Certificate Holders by a plurality of the votes cast at a meeting called for such purpose. * * *

" (D) Each and every successor Trustee hereafter elected shall, in order to qualify as a Trustee under this Declaration of Trust, execute and acknowledge an acceptance of this trust (and any amendment thereto), and file the same in the office of the Clerk of the County of Westchester."

The result of the election of successor trustees, held on March 19, 1937, was filed in the office of the county clerk of Westchester county on March 23, 1937, and disclosed that the Trust Company of Northern Westchester was elected as one of the three successor trustees at such election.

From the foregoing it is apparent that, after having been elected, the only prerequisite to qualifying is that the newly-elected trustee shall execute and acknowledge an acceptance of the trust and file same in the county clerk's office.

This acceptance of trust has been executed by all three of the newly-elected trustees, and is now on file in the clerk's office.

The Trust Company of Northern Westchester being incorporated under the banking laws of this State, is not required to file any bond as a prerequisite to qualifying, and, having filed its acceptance, is to all intents and purposes now acting as one of the trustees of said estate.

The final order creating this trust, filed in the county clerk's office on April 16, 1935, provides: " Ordered that this Court having assumed jurisdiction of this proceeding * * * hereby retains

jurisdiction of the said cause until the complete liquidation of the Trust Estate and the termination of the Trust, and the Trustees or any other interested party may apply at the foot of this order upon such notice as this Court may direct for such other and further relief as to this Court may seem just and proper."

There can be no doubt but that subdivision A of article VI of the declaration of trust expressly vests in this court the power of removal, to wit: "And the Court may, *at any time*, upon due cause therefor being shown, remove any Trustee."

Therefore, if due cause has been shown, the court is justified in removing the trust company at the present time.

I find and hold that the interlocking relationship as heretofore shown to exist between the trustee (The Trust Company of Northern Westchester) and the servicing agent (the Hudson-Harlem Valley Title and Mortgage Company) does constitute such good cause as to not only justify, but compel, the removal of the Trust Company of Northern Westchester as one of the trustees in this series, and I accordingly remove it as such trustee.

In view of this disposition, it is unnecessary for me to pass upon the other two grounds advanced by petitioner, nor do I attempt to do so.

The other two newly-elected trustees having filed the acceptance of trust, may qualify upon filing a bond in the sum of $5,000 each, pursuant to article III, and upon the approval of such bond are directed to forthwith proceed under the provisions of subdivision C of article VI of the declaration of trust to call a meeting of certificate holders for the election of one successor trustee to fill the vacancy caused by the removal of the Trust Company of Northern Westchester.

In the event of the failure of the trustees Voss and Birmingham to file such bond within ten days after the service upon them of a certified copy of the order to be entered upon this decision, then the resigning and outgoing trustees are directed to call and hold such election.

Settle order on two days' notice.