Raymond S. POWERS, Eula R. Creswell, James A. McCullough, Margaret Siress, Bennett R. Wood, M.D., Mrs. Edward Grace, Eugene Downes, George Downes, Augusta Landweh and Lorenz H. Twillmann (Plaintiffs), Appellants,

v.

Ray L. JOHNSON, Robert W. Maysack, Laurel Hill Memorial Gardens, Laurel Hill Cemetery Association and Plymouth Securities Company (Defendants), Respondents.

No. 29913.

St. Louis Court of Appeals.

Missouri.

Nov. 5, 1957.

618

William J. Becker, Clayton, for appellants.

Biggs, Hensley, Curtis & Biggs, Ward Fickie, St. Louis, for respondents.

HOUSER, Commissioner.

For a succinct statement of the object, general nature and background of this case reference is made to the opinion of the Supreme Court transferring the cause to this court for lack of jurisdiction. Powers v. Johnson, Mo.Sup., 302 S.W.2d 899.

The petition of the cemetery lot owners charged that defendants Johnson and Maysack deprived plaintiffs of their "rights, interests and equities" in their burial properties "by devious schemes, devices, procurements, manipulations, transfers and general fraudulent conspiracy;" that Johnson and Maysack operate, manage, control and dominate the Corporation, the Association, Plymouth and the cemetery; that none of the defendants had paid any part of the perpetual care fund to the St. Louis County Clerk, Court or Council as required by § 214.150[1] or made annual reports to those officials; that the funds received by defendants from the sale of cemetery lots have been diverted and used for defendants' personal and individual purposes rather than having been placed in trust as required; that in violation of law and of the

1. All references are to RSMo 1949, V.A.M.S. unless otherwise indicated.

charter of the Association and for their sole use and benefit defendants now propose to build a mausoleum, chapel and funeral parlor on the cemetery grounds and enter into the funeral business and intend to construct the buildings with funds lawfully belonging to the Association; that defendants Johnson and Maysack have established a monopoly in the sale of monuments and grave markers by refusing to permit lot owners to install any marker other than a bronze marker on a grave and insisting upon setting the concrete foundation therefor, charging such a high price as to make it impossible for any other monument dealer to sell a marker; that defendants have been selling burial lots in portions of the cemetery which have not been plotted according to plats recorded in the office of the recorder of deeds and have failed to file a plat designating, year by year, the cemetery lots sold by them in the various parts of the cemetery, in violation of state law. Plaintiffs alleged that they have no adequate remedy at law and that "the nonexistence of the perpetual care fund, as aforesaid, renders their investment in burial lots in said cemetery useless, valueless," etc. Plaintiffs prayed for an accounting of the moneys held as a part of the perpetual care fund; that defendants be directed to turn the perpetual care fund over to the county clerk to be managed by the county council for the use and benefit of the lot owners; that defendants be enjoined from (a) diverting the perpetual care fund moneys to their own private use and benefit; (b) operating a funeral home on the cemetery property without the permission of the lot owners; (c) creating a monopoly in the sale of grave markers within the cemetery, and (d) selling burial lots from unrecorded plats. Plaintiffs further prayed "that the equities, rights, interests and ownerships" as between the lot owners and defendants affecting the property known as Laurel Hills Cemetery be fully adjudicated and determined; that a receiver be appointed to take possession of the books, papers and properties of the defendants affecting the business of the cemetery, with authority to manage, operate and control the business of the cemetery pending the outcome of this action, and that the court make and enter such other and further orders, judgments and decrees in the premises as to the court may seem proper and just.

The answers of the several defendants denied all charges of wrongdoing and challenged the right of plaintiffs to maintain this action, claiming that plaintiffs are not the real parties in interest; that plaintiffs merely lent their names to the action and that the Monument Dealers Association of St. Louis County is the real party in interest.

Certain points raised in appellants' amended brief have been eliminated from our consideration by the Supreme Court in its transfer opinion, Keen v. City of St. Louis, Mo.App., 189 S.W.2d 139, namely, the necessity of an accounting by defendants to the perpetual care fund for additional moneys and the question of the correctness of the amount of money in that fund.

The only controversy remaining for decision relating to the fund is whether it must be placed in the custody of the county council because of the provisions of §§ 214.-150–214.180, both inclusive.

Section 214.150 provides:

"The county courts of the respective counties of this state shall become trustees and custodians of any fund or funds which may be created by any person or persons, firm or corporation, for the purpose of maintaining in part or in whole any public or private cemetery in their respective county. When a gift or bequest is made to said county court they shall accept the same upon the terms and conditions of said gift or bequest and administer said trust fund as herein provided and make report to the circuit court annually showing in detail the manner in which said trust fund or funds have been managed."

Section 214.160 prescribes the kinds of securities in which the court must invest such trust funds and regulates the use of the income therefrom.

Section 214.170 provides for the administration of the income either by the court or by some responsible individual or organization appointed by the court, annual reports, etc.

Section 214.180 relates to records of receipts, disbursements and management of such trust funds.

■■■ Appellants take a position to which we cannot subscribe, namely, that the foregoing sections require that the perpetual care funds of all cemeteries, public and private, including the fund established under the contract between Plymouth and the Association in 1923, must be administered by the county court, or in this instance by the county council. We rule that §§ 214.150–214.180, supra, authorize and empower but do not compel county courts (in St. Louis County the county council) to act as trustees and custodians of trust funds for the maintenance of public or private cemeteries and that such bodies are required to accept and administer such trusts only, if and when they are designated as such trustee and custodian by the act of a trustor, donor or testator. The county council has nothing to do with the administration of this trust for the reason that the Association has been properly authorized, by its articles of agreement as a pro forma decree corporation and by virtue of its contract with the Corporation, to receive and administer as a perpetual care trust fund all sums paid to it under and by virtue of the terms of the contract of 1923 between the Association and Plymouth and its successors, and the Association is qualified and empowered by law to act as such. This construction follows from a consideration of the history of the laws relating to private cemeteries, the title of the act in question, the very wording of § 214.150 and accepted principles of statutory construction.

Laws of 1857, First Session, p. 41, § 1 (now § 214.090) authorized any person who desired to secure a family cemetery on his or her lands to convey to the county court any quantity of land not exceeding one acre, to be held in perpetuity as a cemetery for the use and benefit of the family and descendants of the grantor. By §§ 2, 3 and 4 of that act (now §§ 214.100, 214.110 and 214.120) the county court was given superintending control over the land so conveyed and provisions for the prosecution and punishment of trespassers were made.

Laws of 1875, p. 94, § 1 (now § 214.130) expanded this act so as to authorize county courts, where such family cemetery had been conveyed to the county court, to take and hold in trust grants and bequests of money or certain bonds and to apply the same or the income therefrom to the improvement of such family cemetery, and also authorized and empowered *every incorporated cemetery company* "to take and hold any like grant or bequest in trust, and to apply the same, or the income thereof, under the direction of the board of trustees or directors of such cemetery company, for the improvement of such cemetery, * * *." The act also provided for the enforcement of any such trust in equity.

Laws of 1919, p. 181 (now § 214.140) went further and made it lawful to place in trust any property, real or personal, or the income therefrom, for the use and benefit of any public or private cemetery and authorized and empowered any person, association or corporation duly authorized and capable of qualifying as trustee to receive and hold such property and expend the same for such uses and purposes.

Eight years later the General Assembly passed the sections now under consideration, namely, §§ 214.150–214.180, both inclusive, by a bill the title of which follows: "An Act to authorize the county courts to become trustees of gifts or bequests for the purpose of supporting and maintaining in whole or in part public or private cemeteries.

Defining their powers and authority and duties hereunder." Laws 1927, p. 141.

■ The history of this legislation and the title of the act in question, which is a part of and an aid and guide in the correct construction of a statute, Artophone Corporation v. Coale, 345 Mo. 344, 133 S.W. 2d 343, evinces the legislative intention in enacting § 214.150 et seq. to invest county courts with authority to administer trust funds for the maintenance of *public* cemeteries in cases in which a trustor, donor or testator has designated the county court as trustee. Prior to 1927 county courts had only limited authority to administer funds for the improvement of *family* burying grounds which had been conveyed to the county court and no authority to administer trust funds for the maintenance of any cemetery other than a *private* burying ground. Section 214.150 et seq. was intended to fill a void in the laws relating to cemeteries. The very language of § 214.150 leads to this interpretation. The construction for which appellants contend is strained and forced. Furthermore, appellants' construction would vitiate § 214.140, which in specific terms permits any duly authorized and qualified person, association or corporation to act as trustee and administer such trusts. The General Assembly did not repeal § 214.140 (then § 1094, R.S.Mo.1919) when it passed present § 214.150 et seq. in 1927. The proper construction of § 214.150 permits §§ 214.140 and 214.150 to co-exist. In construing two or more statutes relating to the same subject it is the court's duty to read them together and to harmonize them, if possible, and to give force and effect to each. State on inf. of Taylor v. American Ins. Co., 355 Mo. 1053, 200 S.W.2d 1; State ex rel. Central Surety Ins. Corporation v. State Tax Commission, 348 Mo. 171, 153 S.W.2d 43; 82 C.J.S. Statutes § 366 a.

■ Appellants make the point that the court erred in holding that appellants failed "to show that the trustees (of the Association) have done anything that could

subject them to criticism under our laws and statutes." Appellants contend that the record shows that (1) they failed to pay over moneys owed to the trust fund, (2) failed to make reports and remittances once a month as required, (3) made illegal withdrawals from the trust fund into their own company, (4) invested trust funds contrary to the terms of the trust indenture and (5) commingled the incomes of the Association with those of the Corporation and another cemetery servicing association owned and controlled by defendants Maysack and Johnson. Items (1) and (3) are eliminated from our consideration by the opinion of the Supreme Court in its transfer opinion. Item (2) relates to dereliction by the individual defendants, not as trustees of the Association, but as directors of the Corporation. Under the 1923 contract it is the Corporation, not the Association, which must make monthly reports. Items (4) and (5), however, are established on this record. All of the evidence shows that instead of investing the trust funds in U. S. Government, State, County or Municipal securities of the first class, Federal Farm Loan Debentures or first deeds of trust on improved property in the city or county of St. Louis, as the contract of 1923 requires, the trustees of the Association have invested a considerable portion of the funds in corporate stocks, common and preferred, corporate bonds and certificates of building and loan associations. Trustees charged with making investment of trust funds are strictly held to investments authorized by the trust instrument. Where by the terms of the trust instrument the trustee is restricted to classes of investments narrower than those in which he would otherwise be permitted to invest the trustee commits a breach of trust if he invests in securities not permitted by the terms of the trust, although they would otherwise be proper trust investments. 2 Scott on Trusts, p. 1225; In re Goebel's Estate, 177 Misc. 553, 31 N.Y.S.2d 7, and authorities cited. Investment of trust funds in violation of the provisions of the

trust instrument is a ground for the removal of the trustee, even though it is not shown that the corpus of the trust estate has been jeopardized. McCarthy v. Tierney, 116 Conn. 588, 165 A. 807; In re Rosenberg's Will, 165 Misc. 92, 2 N.Y.S.2d 300; 90 C.J.S. Trusts § 233 f.

The commingling of funds is established by Maysack's own testimony that all of the incomes of Laurel Hills Cemetery, whether of the Association or of the Corporation, are put into one single bank account in the name of the Corporation; that the Association has no bank account of its own; that only one set of books is maintained; that the Association has no books of its own except an interment record; that the only book account showing how the Association stands with the Corporation is a ledger account in the books of the Corporation; that the only method of determining the financial position of the Association is from the general ledger account of the Corporation; that there is no book account of the Association showing its income and expenditures or showing what moneys have been turned over or received back from the Mutual Bank and Trust Company. Such records are only to be found in the books of the Corporation. Likewise, the records with respect to the employment of laborers by the Association are kept only in the books of the Corporation. The employees of the Corporation thus produce and keep the records of the Association. The unauthorized commingling of trust funds with a trustee's own moneys is a ground for removal of the trustee. 90 C.J.S. Trusts § 233 g; Gaston v. Hayden, 98 Mo.App. 683, 73 S.W. 938. In the latter case the court said, 98 Mo.App. loc. cit. 691, 73 S.W. 941.

"It is stated in section 1076 of Pomeroy's Equity Jurisprudence that the duty of good faith prohibits the mixing together the funds of the trustee with those of the beneficiary in one amount, the depositing the trust money in the trustee's own personal account with his own moneys in bank, mingling

the receipts and payments of trust moneys and his own moneys in his books of account, and all similar modes of combining or failing to distinguish between the two funds. He may not thus mingle trust moneys with his own, even though he eventually accounts for the whole, and nothing is lost. This rule is to protect the trustee from temptation, from the hazard of loss, and from being a possible defaulter."

Appellants make the further point that the court erred in refusing to require defendants Johnson and Maysack to resign as trustees of the perpetual care fund and to relinquish control of the Association for failure to comply with the terms of the trust instrument, and adversity of interest. The trial court recognized that the possibility of the officers of the profit Corporation dealing with themselves as trustees of the non-profit Association presented "a serious matter" and expressed the view that the "interests of the lot owners might be better protected in the future and the trustees might avoid what could possibly be unnecessary criticism by resigning their positions with one or the other of these two corporations so that in the future the dealings of these corporations would be at arm's length," but held that the question of their continuation in office was beyond the issues of the case. We rule that the question is within the issues of the case and that the individual trustees Johnson and Maysack should be removed as trustees of the Association. Ouster of Johnson and Maysack was not specifically prayed for in the petition. We are cognizant of the general rule that a court of equity may not order the removal of a trustee unless some kind of a petition for his removal is filed. 90 C.J.S. Trusts § 234 f. Under the peculiar circumstances of this case, however, the question of the conduct of the individual defendants was sufficiently raised notwithstanding the prayer for relief did not contain a request for removal. Plaintiffs charged that Johnson and Maysack dominated the two corporations; that

they schemed, manipulated, transferred and fraudulently conspired; that they failed to account for the perpetual care fund and for the operation of the cemetery and that they improperly diverted funds. The main object of the proceeding was to take control of this fund from the board of trustees, of which they were members, and vest it in the county council. The relief actually prayed for, if granted, would have resulted in the divorcement of Johnson and Maysack from any effective control of the Association, either temporarily by the appointment of a receiver for the books, papers and properties of the Association with authority to manage, operate and control the cemetery business, or permanently insofar as the principal asset of the Association was concerned, by vesting the control of the fund in the county council. The issues of misfeasance in office were litigated; misconduct on the part of the individual defendants was shown, and the parties are before the court. Furthermore, there was a prayer for general relief under which In re Lawyers' Westchester Title & Mortgage Co., 162 Misc. 531, 295 N.Y.S. 274, an application to declare a successor trustee disqualified and incompetent to act as such was treated as an application to remove for cause. Accordingly, we regard the petition as sufficient to support an order of removal. In re De Beixedon's Will, 262 N.Y. 168, 186 N.E. 431; In re Wohl's Estate, Sur., 36 N.Y.S.2d 926; In re Richards' Will, Sur., 10 N.Y.S.2d 510.

In addition to the improper investment of the trust funds and the commingling of funds, as aforesaid, these defendants have placed themselves in a position where, as the owners of a majority of the stock of the profit making Corporation, their individual interests conflict with the interests of the members of the Association, who depend upon the integrity of the trust fund for the perpetual care and maintenance of their cemetery lots under the contract of 1923. Conflict and antagonism between the interests of Johnson and Maysack as directors of the Corporation and as trustees of the Association is inevitable. Johnson and Maysack own in excess of 75% of stock of the Corporation. They also own Memorial Enterprises, a corporation which performs maintenance services for cemeteries. Although they are only two of nine trustees of the Association the evidence shows that they are actually in control of the operation of the Association. Maysack himself testified that the trustees depended upon him and Johnson "to take active management, the actual physical operation of the cemetery." Thus they control all three corporations. There is an interlocking relationship. They are on both sides (indeed, on three sides) of the bargaining table. They cannot, as directors of the Corporation, deal with themselves at arm's length as trustees of the Association. As trustees of the Association they are obligated to demand of themselves as directors of the Corporation full compliance with the contract of 1923 under which the Corporation is obligated, among other things, to develop and improve the cemetery lands, deed all walks, driveways, roads, sewers, entrances, buildings and parks to the Association, convey to the Association all lots in the developed sections bearing numbers ending with naught, give the Association 10% of all moneys received from the sale of other lots in each section, render monthly statements of lots sold, monthly accounts, etc. As directors of the Corporation they are obligated (and it is to their personal interest) to demand of themselves as trustees of the Association full compliance with the Association's contractual obligation to care for the fully developed sections of the cemetery. As directors of Memorial Enterprises, Inc. Johnson and Maysack contract with themselves as trustees of the Association for the maintenance of the cemetery. The members of the board of trustees of the Association are trustees of the perpetual care fund. They act in a fiduciary capacity. They owe an undivided duty to the trust. They cannot take a position wherein their personal interests will conflict with the interests of the

beneficiaries of the trust. Plaintiffs and others similarly situated, beneficiaries of the trust, are entitled to have the affairs of the Association and its funds administered by trustees whose exclusive interest is the advancement of their interests. The trustees should be wholly independent of the officers and directors of the Corporation and of Memorial Enterprises. "No man can serve two masters: for either he will hate the one, and love the other; or else he will hold to the one, and despise the other. Ye cannot serve God and mammon." Matt. 6:-24. While courts of equity are reluctant to remove a trustee there may be sufficient ground for removal where the trustee occupies antagonistic relations with the trust property because of his personal interest therein. Where, as here, there is a direct conflict between the individual and representative interests of the trustees and it is manifestly in the interests of the beneficiaries, the court should exercise the power and remove the trustees. Selleck v. Hawley, 331 Mo. 1038, 56 S.W.2d 387; In re Lawyers' Westchester Title & Mortgage Co., supra; Bogert, Trusts and Trustees, Vol. 3, Ch. 25, § 527, p. 300; 90 C.J.S. Trusts § 232 c(1).

 Finally, appellants claim that by the instrumentality of Plymouth and its successor, the Corporation, and by the use of the Association the individual defendants have defrauded the members of the Association of their property rights; that the whole scheme should be declared illegal and that all of the assets of the Corporation, including the cemetery land, should be ordered returned to the Association. In support of this point appellants cite decisions from other jurisdictions[2] which are based upon

statutes which preclude the making of a profit out of the revenue or funds of a cemetery association derived from lot sales or otherwise received in the operation of the cemetery. For instance, the Ohio statute[3] provides that after paying for its land a cemetery association shall apply all its receipts and income exclusively to laying out, preserving, protecting, and embellishing the cemetery, etc. and to paying necessary expenses and that no part of the funds of a cemetery association or proceeds of land sold shall ever be divided among its stockholders or lot owners, and that all of its funds must be used for the purposes of the association or invested in a fund the income of which shall be so used. The New Jersey statute[4] provides that at least one-half of the proceeds of the sales of lots of any cemetery association shall be first appropriated to the payment of the purchase money of the land until the whole sum is paid and the residue shall be used for the preservation, improvement and embellishment of the cemetery grounds, avenues, roads, etc. and to defray incidental expenses of the cemetery establishment and to no other purposes or object so long as such embellishment is incomplete. The Minnesota statute[5] provides that the proceeds of the sales of lots shall be applied solely to the payment of the purchase of the cemetery grounds and property, fencing, improvement, beautification, etc. The decisions under these statutes hold that the organization of a development or promotion corporation as a shield to do indirectly what its promoters could not do directly (distribute income or funds of the association to trustees) constitutes a fraud upon the cemetery lot owners. They are based upon a public policy which prohibits the organiza-

---

2. Newell v. Cleveland Cemetery Ass'n, 61 Ohio App. 476, 22 N.E.2d 847, loc. cit. 855, affirmed 135 Ohio St. 657, 22 N.E.2d 414; Snyder v. Ridge Hill Memorial Park, 61 Ohio App. 271, 22 N.E.2d 559, affirmed 135 Ohio St. 632, 22 N.E.2d 411; George Washington Memorial Park Cemetery Ass'n v. Memorial Development Co., 139 N.J.Eq. 280, 51 A.2d 221; Id., 141 N.J.Eq. 47, 55 A.2d 675.

3. Section 1721.06, Page's Ohio Revised Code Annotated, 1953.

4. Section 8:2–11, New Jersey Statutes Annotated.

5. Section 306.10, Minnesota Statutes Annotated.

tion and operation of cemeteries for profit. These decisions have no bearing on the instant case. This state has no such public policy. In this state cemeteries may be owned by purely business corporations and managed and conducted for profit. United Cemeteries Co. v. Strother, 332 Mo. 971, 61 S.W.2d 907, 90 A.L.R. 438. There is no statutory duty to devote the proceeds of the sale of cemetery lots solely to the payment of the purchase price of the cemetery land or to devote any particular proportion of the income of a cemetery association to the future care and embellishment of the grounds. In the absence of such a statute cemetery lot owners must rely upon the contractual or trust arrangements of the cemetery association to which they belong for their protection in the matter of perpetual care.

■ We find nothing in the record which entitles plaintiffs to an injunction as prayed.

Accordingly, it is the recommendation of the Commissioner that the judgment and decree of the Circuit Court of St. Louis County be reversed and that the cause be remanded with instructions to the trial court to set aside its judgment and decree of May 11, 1955 and to enter a new judgment finding for defendants and against plaintiffs on the issues of accounting, and injunction, on the question of the correctness of the amount in the perpetual care fund, and on the question whether the perpetual care fund must be placed in the custody of the county council; and further finding and declaring that Johnson and Maysack, as trustees of the Association, have participated in the improper investment of the trust funds contrary to the terms of the trust indenture, have improperly commingled the funds of the Corporation and the Association and that they occupy inconsistent positions as trustees of the Association and directors of the Corporation; and removing Johnson and Maysack from office and declaring vacant their offices as

trustees of the Association. In order that full justice may be done the circuit court is instructed to make an order retaining jurisdiction until complete relief is afforded the parties, and in this connection the circuit court is further directed (1) to order the Association, by and through its remaining trustees, forthwith to conduct an election of two new trustees to fill the vacancies on the board of trustees hereby created and (2) to order the newly constituted board of trustees (a) to proceed, under the supervision of the court, to sell and dispose of the unauthorized securities now held by Mutual Bank and Trust Company as custodian, on such terms and at such times as will best inure to the advantage of the trust, and to reinvest the funds thus realized in securities authorized by the trust instrument and (b) forthwith to set up and establish a separate system of books of account and records and a separate bank account for the Association. Should the remaining trustees fail to elect new trustees as directed the circuit court is directed to appoint two trustees to fill the vacancies on the board of trustees of the Association to serve until the next regular election of trustees. Should the newly constituted board of trustees fail to do and perform 2(a) or 2(b), supra, as directed, the circuit court is instructed to appoint a temporary receiver pendente lite for the Association, with ample authority to proceed to do and perform 2(a) and/or 2(b), supra.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment and decree of the circuit court is, accordingly, reversed and the cause remanded with directions to the trial court to proceed in accordance with the opinion of the court.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.