Grace C. STENSTO, an individual, St. Louis Wilbert Vault Co., a corporation, and Norwalk Vault Company of Missouri, a corporation, Appellants,

v.

SUNSET MEMORIAL PARK, INC., a corporation, Bernard A. Savage, Jr., as an individual and as Trustee of Sunset Burial Park Association, Cemco, Inc., a corporation, Sunset Mausoleums Company, a corporation, Sunset Burial Park Association, an unincorporated association, and the Honorable John Ashcroft, Attorney General of the State of Missouri, Respondents.

Nos. 53494 to 53496 and 53538.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 16, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12, 1988.

Application to Transfer Denied
Nov. 15, 1988.

Susan Nell Rowe, Peter T. Sadowski, St. Louis, for appellants.

Curtis, Bamburg, Oetting, Brackman & Crossen, Randall F. Scherck, Thomas G.

Trackman, Clayton, William Clark Kelly, Asst. Atty. Gen., Jefferson City, for respondents.

SMITH, Judge.

All parties [1] have appealed in this court-tried case challenging the actions of Savage, as an individual and a trustee, and the various corporate defendants in the operation of Sunset Memorial Park and Mausoleum, a cemetery.

Grace Stensto is a lot owner in the cemetery. She is also the president of St. Louis Wilbert Vault Company. Wilbert and Norwalk Vault Company of Missouri are companies engaged in the sale of vaults and crypts exclusively to funeral directors on an "at need" basis (after death). Between them they have approximately 80% of the vault and crypt business in the metropolitan St. Louis area.

Prior to November 15, 1981, Sunset Burial Park Cemetery and Mausoleum was owned by Sunset Burial Park Inc., a subsidiary of Howard National. The cemetery was originally founded by Chrisman Real Estate and Development Company from which Mrs. Stensto purchased her lots. By November 1981, the cemetery had reached a serious state of disrepair, was not properly maintained, endowed care was not being provided and bills were in arrears. The conditions had reached such a level that prior to 1981 Stensto had the remains of her husband and daughter removed from Sunset and reburied elsewhere.

On November 15, 1981, Cemco, Inc., by an escrow agreement, purchased the cemetery, certain assets and certain liabilities thereof from Howard. Cemco is owned by Bernard Savage. Pursuant to the escrow agreement the purchase was finalized on March 15, 1982. In September 1982 Sunset

Memorial Park, Inc. was formed as a wholly owned subsidiary of Cemco to own and operate the cemetery and mausoleum.

Upon the cemetery's original founding, prior to cemetery endowed care statutes in Missouri, the Sunset Burial Park Association was formed. The officers of that association serve as trustees of the Sunset Burial Park Trust which is established to provide endowed care for the cemetery pursuant to Sec. 214.270 et seq. RSMo 1986. Savage and Richard Wolf are the individual trustees of that Trust. Mercantile Trust Company is the corporate trustee. There is additionally a Mausoleum Trust to provide endowed care for the mausoleum buildings and a Floral Trust to provide flowers or decorations for certain graves or mausoleum crypts. Savage and Wolf are also the individual trustees of those trusts.

Plaintiffs brought their lawsuit on two distinct grounds. Stensto, in her capacity as a lot owner, sought to remove Savage as trustee for certain alleged breaches of fiduciary duty, sought an accounting and certain other relief.[2] Wilbert and Norwalk brought their action against defendant Sunset Memorial Park, Inc. to enjoin it from collecting a fee for use of roads in the cemetery by trucks weighing more than one ton. The fee was originated ostensibly to reduce the wear and tear on the roads by reducing their use by large vehicles and as a source of money to repair the damage to the roads. These plaintiffs based their right of recovery predominately on violation of the Missouri Antitrust Law, Section 416.031.1 RSMo 1986.[3] The alleged violations were an attempt to monopolize and an illegal tying contract. These allegations were premised upon the fact that Sunset manufactured and sold a small number of lawn crypts for use in two of the twenty-

---

**1.** We exclude as a party, for purposes of this opinion, the Attorney General, joined in his official capacity, who declined to participate.

**2.** In her second amended petition Stensto sought relief against other defendants, but on appeal has premised error solely on the denial of relief against Savage. We therefore need not discuss her other allegations.

**3.** Their petition alleged also violation of the endowed care statutes. The petition does not identify their standing to assert such violations nor have they raised the issue on appeal. Stensto sought recovery under the fee charge allegations on the same basis as the plaintiff companies. Again no standing was established in the trial court or here for relief to her as to the fee charge and she does not apparently premise error here on that issue.

six sections of the cemetery. These crypts were sold directly to customers on a "pre-need" basis and had been largely contracted for by the predecessor owner of the cemetery. Plaintiffs contended that the road fee was an attempt by Sunset to monopolize the business of vaults and crypts in the cemetery.[4]

Plaintiffs obtained a preliminary injunction in 1983 preventing the cemetery from collecting the entrance fee. Bond was set at $12,000. Sunset at that time ceased selling lawn crypts but did continue to meet its obligations for previously sold crypts. On April 23, 1986, the preliminary injunction was dissolved upon motion of defendant Sunset with the bond to remain in effect until further order of the court. In its final judgment the court ordered that upon the filing of a supersedeas bond the injunction bond was to be released. Supersedeas bonds were filed.

After trial the court entered extensive findings of fact and conclusions of law. It found in favor of all defendants on all counts of plaintiffs' petition. Sunset had filed a counterclaim against Wilbert and Norwalk to recover the amount of the fees it would have collected from those defendants if the preliminary injunction had not been issued. The court found for Sunset on its counterclaims and awarded it $32,050 from Wilbert and $20,050 from Norwalk. These appeals followed.

■ Plaintiffs raise four issues on appeal. The first challenge is to the trial court's failure to remove Savage as a trustee of the Sunset Park Burial Trust and to order an accounting of that trust. This challenge is primarily based on Sec. 214.330 RSMo 1986. That section provides:

"The endowed care and maintenance fund ... shall be permanently set aside in trust. The income from the endowed care fund shall be used by the trustees only to provide care and maintenance for that part of the cemetery in which burial space shall have been sold and with respect to which sales the endowed care

fund shall have been established and not for any other purpose ..."

There is no contention that the principal of the trust fund is not handled in full compliance with the statute. Mercantile Trust functions as manager of the fund pursuant of Sec. 214.350, and makes the investment decisions. It then pays the income received over to Sunset. Sunset commingles the trust income with its general revenue. In *Powers v. Johnson,* 306 S.W. 2d 616 (Mo.App.1957) we held such commingling improper and a basis for removal of a trustee. We also held in that case that for a person to be serving both as a director of the cemetery company and as a trustee of the endowed care trust presented a conflict of interest requiring removal of the trustee. That latter holding was essentially reversed by the general assembly when it enacted Sec. 214.350 in 1961, which states a "director of a cemetery company or other person interested in a cemetery shall not by reason of such interest thereby be disqualified from serving as a trustee of the endowed care fund ..." That section evinces a legislative recognition that the operation of an as yet unsold-out cemetery consists of two closely related and coordinated activities. The cemetery company must maintain the as yet unsold area and must also maintain the property covered by the endowed care trust. From a business standpoint the company has an incentive to do both in order to sell the remaining land.

As a matter of business efficiency, attempting to fully segregate the funds used for each of these separate activities is very nearly impossible. It is not economically practical or prudent to have two entirely separate administrative and custodial staffs, two entirely separate sets of equipment, and separate insurance policies, etc. This is particularly evident when it is realized that on virtually a daily basis that area which is general cemetery operation and that which is endowed care changes. Further, plots laid out adjoining each other may be in different categories depending

---

**4.** Vaults are sealed to prevent deterioration of the coffin from water, bugs or other outside forces. Crypts do not afford such protection. Consequently vaults are more expensive.

on whether or not they have been sold. We believe it is implicit from Sec. 214.350 that the general assembly recognized that endowed care trusts cannot be placed under the same regimen as more conventional trusts. In view of this legislative recognition in Sec. 214.350 and the failure of *Powers* to recognize or discuss the practical operation of a cemetery, we find that case to be of dubious precedential value. To require the cemetery company to attempt to identify with exactitude that portion of each day's labor or expense which was devoted to the two activities and then to issue checks from two separate accounts (if the Mausoleum Trust and Floral Trust are included, four accounts) is in our opinion more than is required by Sec. 214.330. Nowhere in the Cemetery Endowed Care Fund Law is there a requirement that the income from the Fund must be segregated and we decline to impose such a requirement. It is to be noted that Sec. 214.330 draws a distinction between the "endowed care fund" and the "income" from that fund. The requirement of segregation found in Sec. 214.350 relates to the "endowed care funds", i.e. the principal. We find no error in failing to remove Savage for commingling.

▆ Plaintiff Stensto next challenges failure to remove Savage as trustee because of his failure to keep adequate books and records and to account. What we have heretofore said does not mean that endowed care trust income can be used for other than endowed care. The statute clearly states it may be utilized only for that purpose. It does not, however, require that such records establish the minutiae that Stensto contends is required. The records must establish, however, that the endowed care expenditures by the cemetery equal or exceed the income from the trust.

Sunset presented evidence, and the trial court found, that the income from the endowed care trust was not adequate to pay the entire cost of the care. The court also found, as an example, that in an eight month period in 1981 and 1982 $126,000 was expended for "endowed care, mainte-

nance and rehabilitation" and the trust fund yielded only $42,000 in income over that period. The record supports these findings. Stensto's attack on the evidence goes to the weight to be accorded it, not its admissibility. There was substantial evidence, including from Stensto herself, that when Savage took over the cemetery the endowed care portion was in terrible condition and that conditions had substantially improved thereafter. The court had before it considerable financial information and records. We do not find there was sufficient indication of inadequate record keeping to remove Savage or to require a further accounting.

Stensto has raised several additional grounds for which she contends Savage should be removed and an account given. We have reviewed those contentions and find them without merit.

In view of those findings and those articulated earlier, we deem it unnecessary to reach Stensto's point of error challenging the court's conclusion that the court believed Stenso was not entitled to equitable relief because her "real purpose in bringing the suit was as President and part-owner of Wilbert, and not as a lot owner at the Sunset Cemetery." The court's findings make it clear that it found no improper conduct by Savage and that he had sufficiently accounted for the trust income. Under those findings Stensto was not entitled to relief regardless of her "real purpose."

▆ Wilbert and Norwalk contend that the trial court erred in failing to enjoin Sunset from imposing and attempting to collect the fee from large truck operators utilizing the roads in the cemetery. Their first contention is that Sunset does not own the roads, that the Association does. That issue was never raised at trial presumably because plaintiffs in their petition alleged that Sunset is "engaged in the ownership, operation and control" of Sunset Memorial Park. Further the warranty deed transferring title of the cemetery to Sunset transfers the entire property without excluding the roads. The original agreement in 1922 establishing the Association did provide

that the cemetery owner, Chrisman, would convey the roads to the Association, but no evidence was introduced that such was done. That document further provides the owner of the cemetery would have "full and complete supervision and general management over the property." That would include the roads. Generally speaking, an owner of real estate has an absolute right to make whatever rules and regulations he desires regarding the use of his property, so long as the use is not a nuisance. *City of Fredericktown v. Osborn,* 429 S.W.2d 17 (Mo.App.1968) [2–7]. The supervisor and manager would have similar authority as representatives of the owner. There is no merit to plaintiffs' contention concerning ownership even if the issue had been preserved for review.

 Plaintiffs also contend that the fee was an attempt to monopolize the market in burial chambers because Wilbert and Norwalk would have to raise their prices to cover the entrance fee. The Missouri Antitrust Law, Sec. 416.031 RSMo 1986, is construed in harmony with ruling judicial interpretations of comparable federal statutes. Sec. 416.141 RSMo 1986. Monopolization has two elements: (1) possession of monopoly power in a relevant market and (2) the willful acquisition, maintenance or use of that power for anticompetitive or exclusionary purposes. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 105 S.Ct. 2847, 2854, 86 L.Ed.2d 467 (1985).

 In a fifteen month period Sunset sold 24 lawn crypts directly to pre-need customers for use in two of its 26 sections. During the same period Wilbert and Norwalk sold to funeral directors on an "at need" basis 539 burial chambers which were delivered to Sunset. Wilbert and Norwalk sold both vaults and crypts. Sunset never did compete against them in the vault market, in the funeral director market, or in the "at-need" market. Wilbert and Norwalk did not compete against Sunset in the pre-need market or the direct consumer market, Sunset's only markets. Wilbert and Norwalk were wholesalers, Sunset was a retailer. There was consider-

able evidence that the condition of the roads in the cemetery was bad and that heavy trucks caused greater damage than other vehicles. The fee was imposed against all trucks using the roads, including monument company trucks with whom Sunset did not compete. It was not just imposed on plaintiffs' trucks. These facts speak several things: (1) Sunset was not in direct competition with Wilbert or Norwalk in any market, (2) Sunset did not have a monopoly or monopoly power even in its own cemetery and (3) the fee was not imposed for anticompetitive purposes. Plaintiffs' contention of an attempt to monopolize through imposition of the large truck fee is totally devoid of merit and borders on the frivolous.

 The same is true of their claim that an illegal tying arrangement existed. The theory advanced is that Sunset was using its monopoly power in its cemetery to induce purchasers of lots to also purchase a crypt from Sunset. This was allegedly accomplished by imposing the truck fee on plaintiffs. The essential characteristic of an invalid tying arrangement is the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want or would have preferred to buy elsewhere on different terms. *Jefferson Parish Hospital District No. 2. v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 1558 [3], 80 L.Ed.2d 2 (1984). There is simply no evidence at all in this record that Sunset attempted to force purchasers of lots to buy lawn crypts from it. As with most cemeteries Sunset requires that some form of vault or crypt be utilized to contain the coffin. This is to prevent unusual settling of the earth and movement of the coffin after burial. Sunset offered crypts only to purchasers of lots in two sections of the cemetery when the purchase was made directly from Sunset on a pre-need basis, a relatively small amount of the cemetery lot business. Nowhere is there evidence that Sunset coerced or forced such purchasers to buy crypts from it as a condition of buying a lot.

Stensto, Wilbert, Norwalk and Sunset have all appealed from the trial court's award of damages. After the preliminary injunction was dissolved, Sunset reduced the fee to $45 as an adequate amount to cover the road damage. The trial court awarded Sunset that amount for each use of the road by Wilbert and Norwalk during the three year pendency of the preliminary injunction. Sunset contends it should have been awarded the original $100 fee. Plaintiffs contend no damages should have been awarded because Sunset did not own the roads or have maintenance responsibility therefore. That contention is without merit. Plaintiffs also contend that the amount of damages is limited by the injunction bond. In that, they are correct.

The plaintiffs obtained the injunction on the basis that they would suffer irreparable damage if they were required to pay the fee. After the preliminary injunction was dissolved, they began delivering their product on trailers attached to pickup trucks which did not require payment of the fee. This was a method known to be available to plaintiffs at the time they obtained the injunction and a method utilized by them during the pendency of the injunction in other cemeteries. The bond provided "for the payment of such costs and damages as may be incurred ... by any party who was found to have been wrongfully enjoined ..." The record makes abundantly clear that Sunset was wrongfully enjoined and was denied the road fees it was authorized to charge.

Section 526.070 RSMo 1986, requires a bond as a condition of a temporary injunction. The statutory requirement of a bond and the allowance of damages upon its dissolution is a departure from common law. At common law, barring evidence of bad faith, a plaintiff who secured an injunction that was subsequently dissolved incurred no liability; any damages resulting from the injunction were attributable to the issuing court and *damnum absque injuria*. The defendant's only recourse was an action for malicious prosecution based upon bad faith. *Collins & Herman Inc. v. St. Louis County*, 684 S.W.2d 324 (Mo. banc 1985) [1]. The statute requiring a bond was intended to ameliorate the harsh consequences of the common law and discourage frivolous actions. Secs. 526.070, 526.-200 and 526.210 and Rule 92.02(c) provide the only basis for an assessment of damages arising from the issuance of an injunction. *Id.* Presumably those statutes and rules do not impact upon Sunset's rights at common law to seek recovery for malicious prosecution or possibly abuse of process if it is able to establish the elements of those torts. But in this proceeding the amount of the bond establishes the limit of damages Sunset is entitled to recover.

The judgment of the trial court is modified to provide "Judgment is further entered on behalf of Defendant Sunset Memorial Park Inc. against St. Louis Wilbert Vault Company and against Missouri Norwalk Vault Company, jointly and severally in the total amount of $12,000 on said defendant's counterclaim, costs are assessed against plaintiffs." As so modified the judgment is affirmed. Costs on appeal are assessed against Appellants Grace C. Stensto, St. Louis Wilbert Vault Company and Missouri Norwalk Vault Company.

KAROHL, P.J., and KELLY, J., concur.