TRADERS NATIONAL BANK OF KANSAS CITY, Trustee under the Last Will and Testament of William V. Sandhaus, Deceased, Plaintiff,

v.

Edward LEVINE, Appellant,

Mildred Levine, Appellant,

Rochelle Beth Levine, a minor,

and

Jacqueline Dawn Levine, a minor, Respondents,

Howard T. Levine, a minor, et al., Defendants.

Nos. KCD 27510 and KCD 27511.

Missouri Court of Appeals, Kansas City District.

Sept. 2, 1975.

Motion for Rehearing and/or Transfer Denied Oct. 22, 1975.

Application to Transfer Denied Nov. 10, 1975.

Daniel J. Matula, Kansas City, for appellant Edward Levine.

Robert A. Sniezek, Kansas City, for appellant Mildred Levine.

Herbert Jacob, Robert E. Rosenwald, Michael Phillip O'Keefe, Kansas City, for respondents Rochelle Beth Levine and Jacqueline Dawn Levine.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Action to construe testamentary trust.

William V. Sandhaus, a Kansas City attorney, died July 7, 1953. His wife had predeceased him. He was survived by a daughter, Mildred Levine. Mildred's only child was a son, Edward Levine, born October 8, 1935. Mr. Sandhaus's will, executed September 26, 1952, was admitted to probate. It directed payment of his debts, made three specific bequests and left personal articles to Edward Levine. It also disposed of his interest in his law firm. Article 7, which is here in question, read as follows:

"All the rest, residue and remainder of my property, whether real, personal or mixed, of whatsoever the same may consist, and wheresoever the same may be situated (which is hereinafter sometime referred to as ("Trust Estate"), I give, devise and bequeath to the TRADERS NATIONAL BANK of Kansas City, Missouri, as Trustee, or to it's (sic) successor or successors, in trust for the use and purposes, and upon the terms and conditions hereinafter stated.

"(a) I authorize my Trustee to pay to my daughter, MILDRED LEVINE, not less frequently than quarterly, ONE HUNDRED FIFTY DOLLARS ($150.00) per month out of her share of my Trust Estate, which is one-half, as long as there remains any monies in her share of my estate.

"(b) I hereby authorize my said Trustee to pay the net income not less than quarterly out of the other one-half of my Trust Estate to my grandson, EDWARD LEVINE, until he reaches the age of Thirty-four (34) years. Should my grandson, EDWARD LEVINE, be living with his lawful wedded wife at the time he reaches the age

of Thirty-four (34) years, then the trust hereby created will terminate and the Trustee shall pay over and distribute to EDWARD LEVINE, his share of my Trust Estate, including principle (sic) and any accrued interest. Should my grandson, EDWARD LEVINE, die before reaching the age of Thirty-four (34) years and leave lawful issue surviving him, then I authorize my said Trustee to pay the net income to the legally appointed guardian for the maintainence (sic) and support of the children of EDWARD LEVINE until the houngest (sic) child shall reach the age of Thirty-four (34) years, when said trust hereby created shall terminate and the Trustee shall then pay over and distribute, share and share alike per stirpes and not per capita, the entire remaining 50% of my Trust Estate together with any accrued undistributed income thereon."

The trust was established and the ½ share for Mildred's benefit was exhausted by payments to her.

The trustee paid the income from the remaining ½ to the grandson, Edward, until October 8, 1969, when he reached the age of 34 years. Edward had married, but the marriage had ended in divorce on November 24, 1967, and Edward was unmarried on October 8, 1969. Two children were born of Edward's marriage, Rochelle Beth Levine, born December 20, 1962, and Jacqueline Dawn Levine, born July 31, 1965. Sometime after October 8, 1969, Edward did remarry and he adopted three minor children, Howard T. Levine, Marcia Lynne Levine and Robyn Ruth Levine, formerly Boasbert, born by a prior marriage to Edward's second wife. Edward's first wife remarried and on May 21, 1971, the children of Edward were adopted by her husband and took the name of Lorie.

On October 23, 1969, the trustee under the will, Traders National Bank of Kansas City, filed this suit in the Jackson County Circuit Court for construction of the will. It alleged that since Edward Levine was living when he reached the age of 34, ques-

tions existed as to whether the trust for his benefit had terminated, who should receive distribution upon termination and if the trust had not terminated, for whose benefit the trust should continue to be held.

Separate answers were filed by Mildred Levine, Edward Levine and by the guardian ad litem, for Rochelle Beth and Jacqueline Dawn Lorie. Each asserted that the questions propounded by the trustee should be favorable to that party. A guardian ad litem of Edward's adopted minor children filed an answer on their behalf and on behalf of Edward's unborn children, claiming the trust property.

A hearing was held and the trial court found:

"The true intent of Article 7(b) of the Last Will and Testament of William V. Sandhaus, deceased, was to terminate the trust on October 8, 1969, being the 34th birthday of Defendant Edward Levine and, as a result of Edward Levine's failure to meet the above marriage contingency, to immediately vest the balance of the trust assets in those parties who were children of Defendant Edward Levine at the time of the termination of the trust, being Defendants Rochelle Beth Levine and Jacqueline Dawn Levine, the only children (natural born or adopted) of Defendant Edward Levine at such time."

The trial court entered a decree accordingly. It also awarded trustee's fees and attorneys' fees, discussed below. Edward Levine and Mildred Levine filed separate motions to amend the decree. The motions were overruled and they filed separate appeals, now consolidated.

On his appeal, Edward's position is that "title to the corpus of the trust vested in the trustee for the benefit of defendant, Edward Levine, for his lifetime at the date of testator's death subject to being divested upon the condition precedent" that Edward be "living with his lawful wedded wife at the time he reaches the age of 34 years."

■ This contention is difficult to follow, inasmuch as the will clearly provides that Edward shall receive the income from the trust until he reaches the age of 34, and then shall receive the corpus on the condition that he is then married and living with his wife. This language would give Edward an interest for a term of years, with a remainder interest subject to a condition precedent. Such would be the result of application of the rule applied in *Kerens v. St. Louis Union Trust Co.*, 283 Mo. 601, 223 S.W. 645 (banc 1920), cited and relied upon by Edward. Edward does not contend that the condition precedent to his receiving the corpus was fulfilled. The trial court properly denied his claim.

Insofar as the claims of the testator's daughter, Mildred, and the children of Edward, who were successful in the trial court, are concerned, the question is whether or not the presumption against partial intestacy should be applied for the benefit of the grandchildren, or whether the testator should be held to have died intestate as to Edward's share in the corpus of the trust, in the event of his not having met the condition precedent or not having died before reaching the age of 34 years.

The terms of the will itself are obviously lacking in any direction for the distribution of the corpus in the event here present, i. e., Edward's having reached the age of 34 years and being unmarried.

The respondents would support the judgment below, largely on the theory that the trust involved was established in the residuary clause of the will, pointing out that " * * * where a will has been executed there is a presumption against partial intestacy which is particularly strong where the subject of the gift is the residuary estate." *St. Louis Union Trust Co. v. Bethesda General Hospital*, 446 S.W.2d 823, 827[1] (Mo. 1969).

That case involved the disposition of excess income of a testamentary trust, above the amount required to pay designated annuities and expenses. The court concluded

from the terms of the will, applying the above-quoted rule, that the testatrix intended that the excess income should go to the hospital, the residuary beneficiary. Such conclusion was based upon the language of the will itself, viewed in the light of the surrounding circumstances.

Respondents also cite and rely upon *Mercantile Trust Company v. Sowell,* 359 S.W.2d 719 (Mo. banc 1962). That case involved a testamentary trust, under which four individuals and a church were to share the income for a period of 10 years. The trust expressly provided for termination and distribution of the corpus, 90% to Washington University and 10% to the church, in the event of the death of all of individual income beneficiaries before the expiration of 10 years. The trustee sought construction of the will as to the disposition of the corpus in the event that the income beneficiaries were living at the end of the 10-year period. The heirs at law of the testatrix contended that in such event the corpus went to them by the laws of intestacy, inasmuch as the will failed to provide distribution of the corpus in that event. The court concluded that the language of the will itself was sufficient to indicate an intention on the part of the testatrix that the church and Washington University should share in the corpus in the event of termination of the trust at the expiration of the 10-year period. In reaching that conclusion, the court took particular note of the will's direction for division of the corpus "between the two residual beneficiaries above named * * *," and concluded that the church and university were such "residual beneficiaries," to whom the testatrix intended to leave the residue of her estate. 359 S.W.2d 723–724.

Other than the fact that the testator here provided for the children in the event of Edward's death before reaching the age of 34, respondents point to no language of the will expressing an intention on the part of the testator that they shall be the beneficiaries in the event of the termination under the circumstances here involved.

Respondents also cite and rely upon *Mercantile-Commerce Bank & Trust Co. v. Binowitz,* 238 S.W.2d 893 (Mo.App.1951). That case involved a will which provided a detailed, exhaustive scheme for distribution of a trust estate on some nine contingencies, but which failed to provide for the contingency which did occur, i. e., renunciation of the will by the widow. The court concluded that the will was so "comprehensive in its scope, carefully thought out, dispositive, final, broad in its intendment" (238 S.W.2d 897) that it belied any intention on the part of the testator to permit his property to pass by intestacy. The court gave effect to the provisions of the will establishing a trust for the benefit of testator's minor children in certain circumstances, similar to the circumstances actually presented, although the will did not make such express provision.

The will here involved is hardly comparable with that found in Binowitz in length, complexity, or completeness of disposition. Insofar as the trust for Edward's benefit was concerned, disposition of the corpus was provided in only two circumstances, his attaining age 34 and living with his wife or his death prior to age 34, leaving children. No provision was made for the situation here presented. In addition, no provision was made for distribution in the event of Edward's death prior to age 34, leaving no children. Also, as an example of the incomplete scheme of the testator, no provision was made for distribution of Mildred's share in the event of her death prior to the exhaustion of the funds for her benefit.

■ The absence of language of the will which might be subject to construction in the light of the presumption against intestacy and the absence of a detailed scheme of distribution which would evidence more clearly an intention to avoid partial intestacy makes this one of the unusual cases in which it must be concluded that the testator did not provide a complete scheme of distribution, and, therefore, § 474.030, RSMo 1969, becomes applicable and the cor-

pus of the trust for Edward's benefit must be distributed according to the intestacy laws. To hold otherwise would require the court to rewrite the testator's will, which is not the proper judicial function in construing a will. The problem in this regard is pointed up by the trial court's decree, which required that the corpus be distributed immediately to the minor children of Edward. No basis for this direction appears in the will. Had the children succeeded to Edward's share by virtue of his death, their right to the corpus would have been postponed until the younger daughter reached the age of 34. This question is cited merely as an example of the problem that a judicial reconstruction of the will would involve.

As has been repeatedly stated, each case involving construction of a will must depend upon the particular instrument involved and the circumstances surrounding the execution of that particular instrument. No case can be cited which on its facts is exactly in point insofar as the conclusion here reached is concerned. The cases of *Lang v. Estorge*, 242 S.W.2d 50 (Mo.1951) and *Crowson v. Crowson*, 323 Mo. 633, 19 S.W.2d 634 (1929) do support the result here reached.

■ Appellant Mildred Levine has objected to the allowance of attorneys' fees for the minor defendants Lorie and also complains that all of the fees allowed were unreasonable.

At the time of the trial below, the trust fund amounted to $12,662.38. The trial court allowed the following compensation to be paid by the trustee out of the fund:

1. To plaintiff, $116.67 for trustee's fees.

2. To plaintiff for attorneys' fees, $1900.00.

3. To the guardian ad litem for the minors Lorie, $10.00.

4. To the guardian ad litem for the minors Lorie, $2000.00 for attorneys' fees.

5. To the guardian ad litem (an attorney) for the minors Levine, $577.50.

These allowances are authorized by the settled law of this state in cases such as this. *Mercantile Trust Company v. Muckerman*, 377 S.W.2d 355, 361[5] (Mo.1964). The case of *St. Louis Union Trust Co. v. Kaltenbach*, 353 Mo. 1114, 186 S.W.2d 578, 583–584[17, 18] (1945), cited and relied upon by appellant, recognizes the right of the court to make the allowances here involved. In that case, the court did disallow attorney's fees for the guardian ad litem of a minor who had obtained a "substantial recovery," holding that payment of the minor's attorney should come from the recovery, not the trust estate. Such is not the situation here, and that case is not authority for the rejection of the trial court's allowances.

■ Insofar as the amount of the allowances to the trustee for attorney fees and for the guardian ad litem of the Lorie minors (appellant does not question the amount of the award to the guardian ad litem for the minors Levine) is concerned, the complaint of appellant is based upon the claimed disproportion between the allowances and the size of the fund involved. Appellant does not question that the services were necessary, were rendered and that the trial court had before it substantial evidence to support the amounts allowed. In these circumstances, there is no basis shown for disturbance of the considerable discretion allowed the trial court in such matters. See *First National Bank of Kansas City v. Danforth*, 523 S.W.2d 808, 825[17, 18] (Mo. banc (1975).

Counsel for guardian ad litem for minors Lorie have suggested in their brief that an additional allowance should be made for their services on this appeal. Under all of the circumstances, the allowance below is adequate to include such services and no further allowance will be made.

Reversed and remanded for entry of a new decree, directing payment to appellant Mildred Levine as heir at law of the testator of the balance of the corpus of the trust and accumulated income remaining after

payment of fees and allowances chargeable to the trust estate.

All concur.