Travis PAYNE, et al.,
Plaintiffs-Respondents,

v.

William Glen BARNES, City of Hope, Shriner's Hospital for Crippled Children, Hope for Hearing Research Foundation, Wells Fargo Bank N.A., Rawlins Barnes Stanley, and Mary Ruth Erhart Fritter, Defendants-Appellants.

No. 12505.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 17, 1982.

John M. Belisle, J. D. Baker, Belisle & Baker, Osceola, for plaintiffs-respondents.

Julius F. Wall, Poague, Wall, Eshelman & Cox, Clinton, Kerry D. Douglas, Douglas, Douglas & Lynch, P. C., Bolivar, for defendants-appellants.

GREENE, Chief Judge.

Plaintiffs, who are sister and brothers to each other, and are niece and nephews of Travis Payne, Sr., deceased, filed a two-count petition in the Circuit Court of St. Clair County, seeking partition of five tracts of real estate located in St. Clair and Henry Counties, and an accounting of a trust fund from a court-ordered sale of a sixth tract. They sought a determination of who had legal interests in the real estate and trust fund, and the sizes of those interests, contending that they and numerous named defendants owned such interests as the heirs at law of Travis Payne, Sr., but with their status as heirs determined as of the date of death of Louis Wilson Payne, a grand-nephew of Travis, Sr., who was the life tenant of all the real estate involved in the suit.

Appellants here were among the several defendants who answered, and are descendants, or claim by testamentary gift through descendants of two sisters of Travis Payne, Sr. In their answer, they agreed that the heirs at law of Travis, Sr. were the persons entitled to share in the real estate and trust fund, but contended that the status of all such heirs at law should be determined on the date of death of Travis, Sr., rather than the date of death of the life tenant. If their contention is correct, they will receive a greater share on distribution than they would if the determinative date is that of the death of the life tenant. In fact, some of the defendants who claim as or through spouses of the collateral descendants of Travis Payne, Sr., would obtain nothing unless their contention as to the applicable date of determination is correct, as they could never themselves be heirs at law of Travis Payne, Sr.

The trial court determined that the real estate could not be partitioned in kind, and ordered it sold. The net proceeds of the sale were $435,639.13, while the amount held in trust from the proceeds of the earlier sale of the sixth tract amounted to $16,639.35.

The suit was then tried on the pleadings and arguments of counsel because there

was no dispute as to the basic facts, which facts are as follows: Travis Payne, Sr. owned all of the land in question. On May 24, 1929, he conveyed two of the tracts of real estate by warranty deed. One of these tracts was sold in 1958 after a court order, and the proceeds were ordered held in trust for the beneficiaries of Travis, Sr. The second deed granted "a life interest only" in the real estate to Louis Wilson Payne, with "remainder in fee simple to the bodily heirs of the said Louis Wilson Payne." There was no language in the deed which purported to dispose of the real estate in the event the remainder after the life estate should fail. On the same day, Travis, Sr. executed his will. As to the four tracts of real estate there devised, the will provided they were to be held in trust, by trustees named in the will, with the income from the land to be paid to three brothers, two sisters, and a sister-in-law of the testator during their lifetimes, and that when the last of them died, the land would be "held in a life estate by Louis Wilson Payne, the son of my nephew, Louis H. Payne, with the remainder in fee simple to his bodily heirs." Like the deed mentioned earlier, the will did not contemplate the contingency of a failure of the remainder, and there was no residuary clause in the will.

Travis Payne, Sr. died on August 15, 1930, without issue, and without ever having been married. The will was admitted to probate, and the trustees assumed control and management of the real estate. One of the brothers named in the will as income beneficiary of the real estate trust (John B. Payne) predeceased the testator. The last of the remaining brothers and sisters so named died in 1938 (Eloise Disa Payne Wilson), and the sister-in-law (Emma Payne) died in 1962. At the time of his death in 1930, Travis Payne, Sr. was survived by the four brothers and sisters, and by the issue of five predeceased brothers and sisters. The life tenant, Louis Wilson Payne, was a grandson of one of the predeceased brothers of Travis, Sr. Louis Wilson Payne died without issue on May 4, 1980. This partition and accounting suit followed.

Based on these facts, the trial court's findings included:

"That the Last Will and Testament of Travis Payne, Sr., was dated May 24, 1929, the same day as the deed recorded at Book 182, Page 269 referred to above. That by the execution of the deed recorded at Book 182, Page 269 referred to above, his Last Will and Testament and other deeds of the same date for land which is not the subject of this lawsuit, Travis Payne, Sr. intended to dispose of his entire estate upon his death. That the decedent, Travis Payne, Sr., did not intend to die intestate as to any portion of his estate",

and

"That upon the death of Louis Wilson Payne, the gift-over to the bodily heirs of Louis Wilson Payne contained in the deed and will referred to above failed for a want of a taker. That it was the intention of the testator, Travis Payne, Sr., as expressed within the four corners of his Last Will and Testament that the fee simple estate in the above described tracts of land should vest in the heirs at law of Travis Payne, Sr. on the date of death of the life tenant with the heirs at law of Travis Payne, Sr. to be determined as of the date of death of the life tenant, Louis Wilson Payne."

■ The judgment of the trial court in a court-tried case must be affirmed if it is based on substantial evidence, is not against the weight of the evidence, and contains no erroneous declaration or application of law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). That part of the judgment declaring that it was the intent of Travis Payne, Sr., as expressed within the four corners of his will, that the fee simple title in the real property conveyed by the deed and will should vest in his "heirs" as determined on the date of the life tenant's death was an erroneous declaration and application of law. We therefore reverse.

■ An examination of both the deed and the will in the case clearly reveals the creation of life estates in Louis Wilson Payne, contingent remainders in fee to the

issue of Louis Wilson Payne,[1] and reversionary interests in Travis Payne, Sr. Reversions of this type are created by operation of law, are vested but defeasible, and freely subject to transfer by deed, will, or by intestate descent. Eckhardt & Peterson, Possessory Estates, Future Interests and Conveyances in Missouri § 43, 23 V.A.M.S. at 42 (1952); Maus, Probate Law and Practice, 3 Mo. Practice Series § 352 (1960); 1 Simes, Law of Future Interests § 45 (1936); See also *Norman v. Horton,* 344 Mo. 290, 295, 126 S.W.2d 187, 189 (1939). Thus, unless the will of Travis Payne, Sr. made some other disposition of the reversionary interests, they passed to his heirs by intestate descent at the time of his death in 1930. Such is the rule for a reversion created, but not disposed of, by an incomplete testamentary devise, including a disposition upon termination of a testamentary trust. *Crowson v. Crowson,* 323 Mo. 633, 19 S.W.2d 634 (1929); *Hyde v. Hopkins,* 317 Mo. 587, 296 S.W.2d 382 (1927). See also Maus, Probate Laws and Practice, supra, § 337.[2] This also is the rule for a reversion created by deed. *Baker v. Baker,* 363 Mo. 318, 251 S.W.2d 31 (1952); *Davidson v. Davidson,* 350 Mo. 639, 167 S.W.2d 641 (1943).

Plaintiffs argue that (1) Travis Payne, Sr. evidenced his intent, through the contemporaneous will and deed, to dispose of his real and personal property upon his death, and evidenced his intent to not die intestate as to any portion of his estate; (2) the will evidences the intent of Travis Payne, Sr. that his heirs were to be determined as of the date of death of the life tenant, Louis Wilson Payne, for purposes of passing the reversionary interests in the land; and (3) the will bestowed a fee simple title in the testamentary trustees, so that the reversionary interest would go to the testator's heirs determined as of the date of the trustee's termination in 1962, but that a better construction would find an intent to determine such heirs of the life tenant's death in 1980.[3]

The argument numbered (3) above is directed to the tracts mentioned in the will, and claims that a fee simple title vested in the trustees, who acted as such trustees until the death of the last beneficiary in 1962, and therefore no reversion existed at the time of the testator's death. From this, they somehow conclude that at the commencement of the life estate in Louis Wilson Payne, or better yet, at the end of said life estate, the thus delayed residual interest in the property fell to those persons who would have been the heirs at law of testator if he had died at such time.

 The premise of this argument is unwarranted because a trustee takes only that quantum of legal title necessary for the performance of his duties. *Young v. Hyde,* 255 Mo. 496, 506, 164 S.W. 228, 231

1. It is well-established that "bodily heirs", the described takers of the remainders involved here, is a technical term which is limited to the issue of the person named, as distinguished from heirs generally. *Central Trust Bank v. Stout,* 579 S.W.2d 825, 827 (Mo.App.1979); *Godsy v. Godsy,* 531 S.W.2d 547, 550 n.4 (Mo. App.1975); 4 Page on Wills § 34.10 (Bowe-Parker Rev.1961). Thus, it is clear the remainder failed in this case.

2. Passing a reversion intestate created as part of an incomplete testamentary disposition has been justified under the partial intestacy statute, Section 474.030, RSMo 1978. *Traders Nat. Bank of Kansas City v. Levine,* 528 S.W.2d 497, 499 501 (Mo.App.1975). The statute noted had no counterpart prior to the 1955 Probate Code. However, the authorities we cite make it clear that the rule of partial intestacy, applicable to reversions of the sort now at issue, was the law of Missouri at the time Travis Payne, Sr. died.

3. These contentions work to the advantage of respondents because a time long after the death of Travis Payne, Sr. would avoid an equal division among his brothers and sisters with present shares, simply stated, depending on the number of issue of the brothers and sisters, and testamentary dispositions made through the years. Respondents invoke § 474.020, RSMo 1978, because nieces and nephews were in the nearest degree of relationship to Travis Payne, Sr. after the death of the last sibling in 1938. If the statute applied in the manner suggested, there would be equal distribution among the nieces and nephews, and like shares of deceased nieces and nephews, would pass to their issue by representation. This is what the trial court erroneously did, dividing the estate into 23 equal parts, one for each living niece and nephew, and one for each deceased niece and nephew with surviving issue.

(1914); Bogert, The Law of Trusts and Trustees § 144 (Rev.2d Ed. 1979); Maus, Probate Law and Practice, supra, § 423. Even if a testamentary grant to trustees purports to convey a fee simple, if the equitable interest is not of similarly unlimited duration, and not otherwise provided for, the undisposed of interest, legal and equitable, will pass intestate. *Smith v. Smith,* 194 Mo.App. 309, 320, 188 S.W. 1111, 1115–1116 (1916). The trustees here, therefore, held title only to the extent commensurate with the equitable interest in income first created by the will. The various legal future interests thereafter simply were not affected by the trust and limited interest held by the trustees.

The remaining arguments are largely dependent on what respondents view as the "clear intent" of Travis Payne, Sr. to pass the property to the class they represent and in the manner they suggest. However, the testator's intention must be determined by what the will actually says, if the wording of the will is unambiguous. *Thomas v. Higginbotham,* 318 S.W.2d 234, 237 (Mo.1958); *Magruder v. Magruder,* 525 S.W.2d 400, 405 (Mo.App.1975); Maus, Probate Law and Practice, supra, § 314; 4 Page on Wills, supra, § 30.7. There is no ambiguity in this will despite the fact it did not work a complete disposition. Travis Payne, Sr. clearly provided a life interest for close relatives in the income from the property devised to the testamentary trustees. He also clearly provided that upon the death of the last such income beneficiary, the real estate would be held for life by Louis Wilson Payne with the remainder to his bodily heirs. However, neither the strong presumption against partial intestacy, nor the possibility that Travis Payne, Sr. never contemplated that Louis Wilson Payne might die without issue, is sufficient to supply the intent respondent would have us read into the will. *In re Fowler's Estate,* 338 S.W.2d 44, 48–49 (Mo.1960); *Prior v. Prior,* 395 S.W.2d 438, 443 (Mo.1965). The requirement of a written will has been said to be an "insuperable barrier" to enforcing an apparent intention not supported at all by the language used. *Lang v. Estorge,* 242 S.W.2d 50, 53 (Mo.1951); *McCoy v. Bradbury,* 290 Mo. 650, 235 S.W. 1047, 1049 (1921). In such cases, the court has no authority to carry "into effect a conjecture or hypothesis of the testator's intention, by supplying, rejecting, or transposing words." *Crowson v. Crowson,* supra, 323 Mo. at 639, 19 S.W.2d at 637.

"The absence of language of the will which might be subject to construction in the light of a presumption against intestacy and the absence of a detailed scheme of distribution which would evidence more clearly an intention to avoid partial intestacy make this one of the unusual cases in which it must be concluded that the testator did not provide a complete scheme of distribution, and therefore . . . [the property] must be distributed according to the intestacy laws. To hold otherwise would require the court to rewrite the testator's will, which is not the proper judicial function in construing a will." *Traders Nat. Bank of Kansas City v. Levine,* supra, 528 S.W.2d at 500–501.

It must be assumed that Travis Payne, Sr. knew the legal effect of the words he plainly used in the deed and will, even though he thereafter failed to dispose of the reversionary interests remaining in himself. *Thomas v. Higginbotham,* supra, 318 S.W.2d at 237. We refuse, therefore, to judicially create a residuary clause to pass under this unambiguous will the reversionary interests in the real estate involved in this action to the heirs of Travis Payne, Sr., as identified on the date of the death of the life tenant.

The cases cited by plaintiffs in support of their position are not in point. *First National Bank of Kansas City v. Sullivan,* 394 S.W.2d 273 (Mo.1965); *Commerce Trust Company v. Weed,* 318 S.W.2d 289 (Mo. 1958); *Irvine v. Ross,* 339 Mo. 692, 98 S.W.2d 763 (1936); *Epley v. Epley,* 585 S.W.2d 308 (Mo.App.1979). These cases, to which we might add *Graves v. Hyer,* 626 S.W.2d 661 (Mo.App.1981), do not involve reversions at all, but rather conveyances containing remainders in some form whose effect is to dispose of the residual interest of the testator or grantor to a class of

persons determined by proper construction of the instrument to be identified as of the end of some intermediate estates. The remainders there construed, including some dispositions as alternative contingent remainders, involved gifts which, but for the intent apparent from the expressed schemes, would have passed to classes determined at the deaths of the respective testators or grantors. Thus, interests limited over to "heirs at law" (*First National Bank of Kansas City v. Sullivan; Epley v. Epley*), "lineal descendants" (*Commerce Trust Company v. Weed*), "heirs" (*Irvine v. Ross*), and "nearest blood kin" (*Graves v. Hyer*), were construed in context as calling for identifications as of the end of the intermediate estates.[4] Such exercises in construction have no application to the present case where there were no remainders to be determined, and no residuary clause to otherwise pass the reversions which arose by operation of law.

In summary, the reversionary interests of Travis Payne, Sr. in the land conveyed by deed and devised by will vested in his heirs at the time of his death on August 15, 1930. Since no contingent remainders are involved here, as the life tenant died without issue, the real estate, or the proceeds of the court-ordered sales, should have been distributed to the heirs at law of Travis Payne, Sr., with their status as heirs being determined as of the date of August 15, 1930.

The trial court's judgment is reversed, and the cause remanded with directions to render a new judgment consistent with this opinion.

All concur.

---

4. We thus recognize that terms such as "heirs", which is "a word which in a peculiar way speaks to the time of one's death" (*Graves v. Hyer*, supra, 626 S.W.2d at 665), may express an intent to benefit persons who would be testator's heirs as if his devise had occurred at some point other than the date of actual death. We also are aware of the so-called "modern rule" which may actually favor such a construction. Bogert, The Law of Trusts and Trustees, supra, § 182. The present case does not call for us to deal with these principles.