MERCANTILE TRUST COMPANY, N.A., Successor Trustee of the Robert S. Hardie Revocable Trust, Dated 11/29/90, as Amended, Petitioner–Respondent,

v.

Katherine Ann HARDIE, Matthew Robert Hardie, Ian (Krekel) Hardie, and Matthew Robert Hardie, Administrator of the Estate of Michael Gay Hardie, Respondents–Respondents,

and

Columbia University School of Law and St. Catharine's Society at St. Catharine's College, Respondents–Appellants.

No. 23485.

Missouri Court of Appeals, Southern District, Division One.

March 30, 2001.

Robert Penninger, Blackwell, Sanders, Peper Martin LLP, Springfield, Attorney for Appellants.

Clifford S. Brown, Carnahan, Evans, Cantwell & Brown, Springfield, and Rodney H. Nichols, Attorneys for Katherine Ann Hardie, Matthew Robert Hardie, Ian (Krekel) Hardie, and Matthew Robert Hardie, Administrator of the Estate of Michael Gay Hardie, Respondents.

Shrum, Judge

Columbia University School of Law and St. Catharine's College ("Appellants") appeal the summary judgment entered against them by the circuit court of Greene County, Missouri (probate division). The court adjudged that the principal of an express trust established for Michael Gay Hardie ("Michael") by Robert S. Hardie ("Grantor") should be distributed to the administrator of Michael's estate, not to Appellants as residuary beneficiaries under Grantor's trust. This court agrees. We affirm.

Grantor created a revocable living trust on August 24, 1990, in which he transferred certain money and property to the trust estate to be managed and controlled by himself as original trustee. He retained the right (as Grantor) to all the net income and principal of the trust during his life. Also, the trust document instructed the Mercantile Bank of Springfield ("Trustee") on how it was to distribute and deal with the trust estate at Grantor's death. In part, Trustee was to (1) fund a trust for $180,000 to benefit Grantor's grandchildren ("Grandchildren"), administer the trust for a described period, and distribute the $180,000 when and as directed by Grantor, (2) fund a trust of $150,000 to benefit Michael, administer the trust until Michael was age sixty, and then distribute the $150,000 to Michael, and (3) distribute and pay out the residue of Grantor's trust assets to Michael and Appellants in prescribed proportions, free of the trust.[1]

---

1. Before his death, Grantor amended certain   portions of the trust document on November

The only express "lapse" provision in the trust document relating to Michael's trust provided if Michael died before Grantor, "then this [$150,000] gift shall lapse." Grantor died on December 19, 1990, and Michael survived Grantor; consequently, Michael's trust was unaffected by the express lapse language mentioned. Accordingly, Trustee did as Grantor's trust document instructed, namely, it funded Michael's trust with $150,000 and began paying Michael the income monthly from that fund. When Michael died in 1998 at the age of fifty-seven years, his trust corpus remained undistributed per the trust document. Since the trust *did not* expressly direct Trustee what to do with the $150,000 under this circumstance, Trustee sought an interpretation of the trust and a declaration of who should receive the corpus of the trust.

Named in the declaratory judgment action were Appellants, the Grandchildren (Michael's children), and the administrator of Michael's estate (his son, Matthew). Appellants claim that since Michael failed to reach age sixty, he did not satisfy a condition precedent, therefore the trust failed and must be distributed to them per the residuary clause. The administrator and Grandchildren ("Respondents") assert the restriction for distribution until Michael reached sixty was not a condition precedent, but merely a postponement of the enjoyment of the principal in timing only; therefore, the right to the principal vested in Michael when he survived Grantor, and the trust did not fail. As such, Respondents argue the assets of Michael's trust should be distributed to his estate.

The trial court found, *inter alia*, (1) Grantor established "an express trust for the benefit of ... Michael ... if he survived Grantor[,]" (2) "Michael ... did survive [Grantor], and there being no other condition imposed, the ... trust for the benefit of Michael ... vested in Michael

29, 1990. One such amendment reduced the principal of Michael's trust from $250,000 to

... upon the death of [Grantor,]" and (3) "[a]lthough the trust for his benefit vested in Michael ... upon the death of [Grantor], distribution of the principal to Michael ... was delayed until he attained the age of sixty ... years[.]" Further, the court found it was Grantor's intent "that Michael ... or his heirs ... receive the remainder of [the] trust, and specifically did not provide, nor intend, that the principal be added to and distributed as a part of the [residue]...." Therefore, the court granted summary judgment directing Trustee to pay the principal and accrued interest to the administrator of Michael's estate.

## STANDARD OF REVIEW

■ To be entitled to summary judgment, a party must show entitlement thereto as a matter of law; therefore, our review in a case involving summary judgment is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[4] (Mo.banc 1993).

## DISCUSSION AND DECISION

*POINT II: DID COURT ERR IN ITS FINDING REGARDING GRANTOR'S INTENT?*

We reproduce the relevant part of Appellants' second claim of trial court error, as follows:

"II. THE TRIAL COURT ERRED IN HOLDING THAT [GRANTOR] INTENDED THE REMAINDER OF THE TRUST PASS TO MICHAEL'S ESTATE, BECAUSE THE TRIAL COURT READ INTO THE TRUST AGREEMENT AN INTENT NOT FOUND THERE INSTEAD OF APPLYING THE TRUST AGREEMENT ACCORDING TO ITS TERMS, IN THAT THE TRUST AGREEMENT DOES CONTAIN A RESIDUARY DISPOSITION AND DOES NOT CON-

$150,000.

TAIN ANY EXPRESSION OF INTENT LIKE THAT FOUND BY THE TRIAL COURT."

Trying to develop this claim of trial court error, Appellants assert that "[t]he gift in trust for Michael ... was a gift of less than the entire fee simple interest in the property." In conclusory fashion and without citation to relevant authority or an explanation for its absence, Appellants argue that "the remainder" [presumably a reference to the $150,000 principal] that existed if Michael died before reaching age 60, was not part of the gift to Michael or the Trustee; that Grantor had no reversionary interest in the $150,000 because of the presence in the trust of "an effective residuary disposition[;]" and the $150,000, "not being disposed of otherwise," passed to residuary beneficiaries named in the trust. Appellants insist the trial court's finding regarding Grantor's intent for the $150,000, i.e., that it vested in Michael upon Grantor's death, but to be paid out when he reached age sixty, "was not based on what the trust agreement actually said." Based on this premise, Appellants cite *Traders Nat. Bank of Kansas City v. Levine*, 528 S.W.2d 497 (Mo.App.1975), for the general proposition that "[r]ewriting the trust agreement, as the trial court did here, is not a proper judicial function." Appellants also cite *Payne v. Barnes*, 638 S.W.2d 299 (Mo.App.1982), for the proposition that a "testator's intention must be determined by what the will actually says, if the wording of the will is unambiguous." *Id.* at 303[10]. Although the propositions stated in *Levine* and *Payne* are sound, Appellants' point fails because its underlying premise is faulty, i.e., the trial court "read into the trust agreement an intent not found there."

▪ Preliminarily, we note that Missouri courts generally use the same rules for construing both wills and trusts. *Theodore Short Trust v. Fuller*, 7 S.W.3d 482, 488[4] (Mo.App.1999). These basic rules, as described in *Grace v. Perry*, 197 Mo. 550, 95 S.W. 875 (1906), have remained unchanged over the years.

"The controlling rule in construing wills [or trusts] in this state, to which all technical rules of construction must give way, is to give effect to the true intent and meaning of the testator [or grantor] as the same may be gathered from the whole instrument, if not violative of some established rule of law; and in arriving at that intention the relation of the testator [or grantor] to the beneficiaries named in the will [or trust] and the circumstances surrounding him at the time of its execution are to be taken into consideration, and the will [or trust] read as near as may be from his standpoint, giving effect, if possible, to every clause and portion of it, and to this end, if need be, words may be supplied and omitted, and sentences transposed."

95 S.W. at 877.

▪ All technical rules of construction are superseded by these controlling rules. *In re McDonald Revocable Trust*, 942 S.W.2d 926, 931[2] (Mo.App.1997). Courts will not turn to the rules of construction where there is no ambiguity as to the settlor's intent nor attempt to rewrite an instrument in the guise of construction. *See St. Louis Union Trust Co. v. Morton*, 468 S.W.2d 193, 196 (Mo.1971); *Smoot v. McCandless*, 461 S.W.2d 776, 781 (Mo. 1970).

▪ From reading this instrument *in toto*, we believe it is clear what Grantor intended by the provision at issue. The provision as amended reads:

"[T]he Trustee shall set aside [$150,-000.00] ... for the use and benefit of [Michael], *provided he survives Grantor*. The Trustee shall pay to [Michael] each month, [the income] ... until [Michael] reaches the age of sixty (60) years. Upon his sixtieth (60th) birthday, this portion of the Trust shall terminate and the principal thereof ... shall be paid to him in full. *In the event that [Michael]*

*should predecease Grantor, then this gift shall lapse.*" (Emphasis added).

We find Grantor's choice of language in creating and funding Michael's trust, standing alone, strongly supports the trial court's finding that Grantor intended to make a vested gift of the $150,000 to Michael at the time of Grantor's death and only delayed payment of the $150,000 until Michael was sixty years old. The case of *Harris v. Cook,* 98 Mo.App. 38, 71 S.W. 1126 (1903), is instructive in explaining this conclusion.

In *Harris,* a will contained the following: " 'I give and bequeath to Francis W. Walker ... the sum of $800 when he shall arrive at the age of twenty-six years. The said sum of $800 I direct to be loaned out on good real estate security and the interest accruing therefrom to be paid to the said Francis W. Walker.' "

*Id.* at 1127. When the testatrix died, Walker had not reached age 26; accordingly, the $800 bequest was not distributed to Walker on testatrix's death. After reaching age 21, Walker assigned his $800 legacy to one J.P. Rodgers. Walker then died intestate before he reached age 26. In litigation over the $800, the trial court found the $800 "was a vested legacy[;]" consequently, Rodgers was entitled to the money.[2] The judgment was affirmed on appeal. In affirming, the appellate court cited foreign cases holding that if a will severs a prescribed sum of money from a main estate and prescribes it go to a beneficiary in the future, but directs immediate distribution of interest earned thereon to the beneficiary, such a legacy is deemed vested upon the death of the testator or testatrix.[3] *Id.* at 1127. Continuing, the *Harris* court wrote:

"Had the bequest ended with the words "when he shall arrive at the age of twenty six years," the legacy would have been a contingent one. But the clause following these words, which directs that the sum shall be taken from the bulk of the estate immediately on the death of the testatrix, and loan at interest for the benefit of the legatee, shows that the intention of the testatrix was that the gift should immediately vest on her death, and that the payment only was to be postponed."

*Id.* at 1127–28.

Although the language creating Michael's trust is not identical to that in *Harris,* the directives which show an intent for the gift to vest immediately upon Grantor's death are, in essence, the same as those found in *Harris.* We refer to the directives that Trustee immediately set aside the corpus for Michael's trust from the bulk of Grantor's estate and immediately commence paying Michael income earned on his trust corpus. Specifically, Grantor directed that at his death, the Trustee was to "set aside [$150,000] ... for Michael," start paying the interest from the $150,000 to Michael monthly, and deliver the $150,000 principal sum to Michael when he reached the age of 60 years. In the introductory portion of the residuary clause, Grantor made it clear that Michael's trust was to be taken immediately from the bulk of the trust estate, i.e., severed *instanter,* when he provided: "VII. After *fully funding all hereinabove described gifts,* the Trustee shall pay [pre-

---

**2.** Implicit in the court's decision was a finding that the legacy was indefeasibly vested and not subject to a condition subsequent, i.e., reaching the age of twenty-six.

**3.** This excerpt from *Warner v. Durant,* 76 N.Y. 133, 1879 WL 10601, taken from the *Harris* opinion, is illustrative of other authority cited in *Harris:*
" '[W]here, by the terms of the bequest the gift is to be severed instanter from the general estate, and to be held by trustees for a specified time for the benefit of the legatee, and then to be paid over to him, and in the meantime the interest thereof to be paid to him, this is indicative of the intent of the testator that legatee shall, at all events, have the principal, and is to wait only for the payment until the day fixed.' "
71 S.W. at 1127.

scribed percentages] of the net balance of the trust estate to [designated beneficiaries.]" (Emphasis added). The "gifts" which had to be "fully funded" before Trustee paid out the balance of Grantor's estate included Michael's $150,000. As in *Harris*, Grantor's directive was to fund Michael's trust immediately upon Grantor's death. As in *Harris*, the income from the $150,000 was to go immediately to Michael on a monthly basis, not to someone else or to be accumulated until Michael reached the age of sixty. The language used shows Grantor intended the $150,000 gift to vest immediately in Michael, with only the enjoyment of the corpus being postponed until he reached the prescribed age.

We are confirmed in this view by the noticeable absence in the trust document of language that the $150,000 gift failed or lapsed if Michael died before reaching sixty. It would have been very simple for Grantor to so provide, much as he did if Michael had predeceased him. To the same effect is a latter provision in the trust document that provides for the death of a grandchild. If a grandchild predeceased Grantor or did not reach age twenty-three (when he or she was to receive the principal from his or her trust), then the gift lapsed and was passed specifically by way of the residuary clause. No such provision was included for Michael. Appellants' specious response to such argument is that such a provision may have been merely overlooked or inadvertently omitted. We find it highly unlikely that Grantor would consider the possibility that a grandchild might not reach the age of *twenty-three*, yet would inadvertently fail to consider that his son might not live to age *sixty*. This intentional omission is evidence that Grantor intended the $150,000 gift to vest in Michael at Grantor's death, but that Michael would have to wait for payment until the date fixed.

Evidence of Grantor's intent is also found in the provisions relating to Michael's death before Grantor. Extensive contingencies are made within the document for this situation. Gifts to Appellants and the Grandchildren's trusts were to be increased if Michael died before Grantor. No identical provision was made in case Michael survived Grantor, but died before his sixtieth birthday. Again, such intentional omission is evidence that Grantor did not intend Michael's $150,000 gift to be a contingent one.

■ We conclude that the wording of the trust instrument made Michael's gift a vested remainder at the time of Grantor's death. Stated otherwise, we find that Grantor intended to give Michael $150,000 upon the contingency that he survive Grantor. Once Michael did survive Grantor, equitable title to the $150,000 gift became indefeasibly vested in Michael.[4] Only the timing of the enjoyment of the corpus was postponed. Because Michael had an indefeasibly vested interest in the principal, that money must be paid to his estate. The trial court did not err in its judgment. Point II is denied.

## POINT I: DID COURT ERR IN HOLDING THE TRUST VESTED IN MICHAEL?

We reproduce Appellants' first point in part because we do not understand the point sufficiently to paraphrase or summarize what is written. In pertinent part, the point reads:

"THE TRIAL COURT ERRED IN HOLDING THAT [MICHAEL'S] TRUST ... VESTED IN ... MICHAEL BECAUSE THE *TRUST ESTATE WAS VESTED IN THE TRUSTEE*, IN THAT THE *TRUST ESTATE WAS CONVEYED TO THE TRUSTEE*, THE TRUST WAS *AN ACTIVE TRUST*, AND [MICHAEL] WAS

4. We pause here to note that equitable interests, like legal interests, are capable of becoming vested. *See McIlvaine v. Smith*, 42 Mo.

45, 49 (1867); *Hereford v. Unknown Heirs, Etc.*, 292 S.W.2d 289, 294 (Mo.banc 1956).

GIVEN ONLY A *BENEFICIAL IN-TEREST* IN THE TRUST ESTATE UNTIL HE REACHED [SIXTY]." (Emphasis added).

When we turn to the argument section of the brief, we find no definitive enlightenment about Appellants' contentions. What we do find is repeated use of the phrase "trust estate" without definition or description, and an argument without any apparent understanding of the fundamental nature of a trust.

As we understand it, Appellants' argument is premised on the notion that when the trial court found Michael's trust "vested" in Michael, the court was declaring that both the equitable and legal title to the $150,000 vested in Michael. Appellants assert this supposed trial court finding was erroneous because of trust provisions that empowered Trustee—not Michael—to administer the *trust estate*. For instance, Appellants point out that Trustee was directed to "take, hold, possess, manage and control" the *trust estate* and to accumulate income or pay income to someone other than Michael if Michael became disabled, whereas, the trust document gave Michael "no power to process or administer the *trust estate*" and contained a spendthrift provision that prohibited Michael from "conveying, anticipating or encumbering his interest in the trust." With these observations made, Appellants contend: "These terms constitute a trust with the *trust estate* vested in the trustee, not in the beneficiary." (Emphasis added). As authority for this argument, Appellants cite three cases, *Humphreys v. Welling*, 341 Mo. 1198, 111 S.W.2d 123 (1937), *Krause v. Jeannette Inv. Co.*, 333 Mo. 509, 62 S.W.2d 890 (1933), and *Levine*, 528 S.W.2d 497. These cases are unpersuasive because all are distinguishable on their facts. Under the circumstances, this excerpt from *Hereford*, 292 S.W.2d at 293, is apropos:

"The infinite variety of expressions and the differing shades of meaning so often attached to identical words or phrases when employed by the makers of wills [or trusts] in a context and under certain circumstances peculiar to the context of the will [or trust] of each testator [or grantor] and the circumstances under which it was written make prior decisions construing similar words or phrases of far less value as precedent than those in other fields of litigated controversies."

The fundamental nature of a trust is the division of title; the trustee being the holder of legal title and the beneficiary that of equitable title. *Farris v. Boyke*, 936 S.W.2d 197, 200[4] (Mo.App. 1996); *McDaniel Title Co. v. Lemons*, 626 S.W.2d 686, 690[4] (Mo.App.1981). Moreover, equitable interests can vest in the same fashion as legal interests. *Lehmann v. Janes*, 409 S.W.2d 647, 655 (Mo.1966); *Hereford*, 292 S.W.2d at 294. The legal title can vest in the trustee, while simultaneously, the equitable title can vest in the beneficiary. *Lehmann*, 409 S.W.2d at 655–56; *Hereford*, 292 S.W.2d at 294. A vested equitable estate in fee can be alienable, i.e., in the absence of provisions prohibiting alienation, or can be passed through inheritance. *See Lehmann*, 409 S.W.2d at 655; *Jarboe v. Hey*, 122 Mo. 341, 26 S.W. 968, 969 (1894) (recognizing existence of equitable fees); *Bredell, et. al. v. Collier, et. al.*, 40 Mo. 287 (1867); *Lich v. Lich*, 158 Mo.App. 400, 138 S.W. 558, 562 (1911). Once the trust terminates, the legal title, which was vested in the trustee, then vests in the equitable title holder, the two titles merge, and the equitable title holder becomes the owner of a full fee interest. *Lehmann*, 409 S.W.2d at 655.

Whatever may be Appellants' arguments, anything contrary to these principles is simply wrong. Having concluded earlier in our discussion of Point II that an equitable interest in the $150,000 indefeasibly vested in Michael upon Grantor's death (with only enjoyment of the principal postponed), there need be no further discussion of Appellants' first point. The point is denied.

*POINT III: ALLEGED ERROR IN USE OF RULES OF CONSTRUCTION?*

██ Again, we deem it necessary to quote Appellants' point as we do not sufficiently understand it to paraphrase or summarize what is said.

"III. THE TRIAL COURT ERRED IN FAILING TO CONSTRUE THE TRUST AGREEMENT USING THE SAME RULES THAT APPLY TO WILLS, BECAUSE MISSOURI COURTS GENERALLY APPLY THE SAME RULES OF CONSTRUCTION TO WILLS AND TRUST AGREEMENTS, IN THAT WHERE A PRE–RESIDUARY TRUST UNDER A WILL FAILS, THE TRUST ESTATE PASSES TO RESIDUARY BENEFICIARIES, BUT HERE THE TRIAL COURT HELD THAT WHEN THE PRE RESIDUARY TRUST FOR MICHAEL ... FAILED, THE TRUST ESTATE DID NOT PASS TO THE RESIDUARY BENEFICIARIES."

Whatever Appellants are attempting to say in this point, the premise of it is that "the trial court held that when the pre-residuary trust for Michael ... failed, the trust estate did not pass to the residuary beneficiaries." However, the trial court *did not* order Trustee to distribute the $150,000 to the administrator of Michael's estate based on any express or implicit finding that "the pre-residuary trust for Michael ... failed" or because the court failed to use "the same rules that apply to wills" in construing Grantor's trust. To the contrary, as explained earlier in Point II, the essence of the trial court's finding is that the equitable interest in the $150,000 vested in Michael at Grantor's death, the legal title thereto vested in Trustee, and Michael's right of enjoyment of the $150,000 was only delayed until he became age sixty. By mischaracterizing the trial court's finding and its reasoning, Appellants are essentially asking us to convict the trial court of an error that it did not commit. This we will not do. *See Greene County v. Pennel,* 992 S.W.2d 258, 261 (Mo.App. 1999); *Air Evac EMS, Inc. v. Goodman,* 883 S.W.2d 71, 74 (Mo.App.1994). As Point III is framed, Appellants are in effect asking us to decide an abstract question that did not arise here. Appellate courts do not render advisory opinions or decide nonexistent issues. *In re Estate of Looney,* 975 S.W.2d 508, 519[29] (Mo.App. 1998); *In re Marriage of DuBois,* 875 S.W.2d 223, 226[2] (Mo.App.1994). Therefore, we refrain from deciding Point III. *See Looney,* 975 S.W.2d at 519.

Having found no reversible error, we affirm the judgment of the trial court.

PARRISH, P.J., and MONTGOMERY, J., concur.