Ellen Latrell **WILLIAMS**, Appellant,

v.

Brett Jerome **DUNCAN**, Successor Trustee of the **PAULINE M. BAB-COCK, LIVING TRUST**, and Evelyn Nadine Duncan, Respondents.

No. 24094.

Missouri Court of Appeals, Southern District, Division One.

Sept. 28, 2001.

D. Sherman Cox, St. Louis, for appellant.

R. Scott Reid, Fredericktown, for respondent.

BARNEY, Chief Judge.

Ellen Latrell Williams ("Appellant") appeals from the judgment of the Circuit Court of Iron County, Missouri, ("the court") appointing the Public Administrator of Iron County to serve as successor trustee of the Pauline M. Babcock Declaration of Living Trust ("the Trust"), following the Circuit Court's decision to remove Brett Jerome Duncan ("Respondent") as successor trustee of the Trust. In its judgment the court also directed the successor trustee to take further measures, under the court's direction, to assure the integrity of trust assets. Appellant raises two points of error.[1] In her first point, Appellant posits trial court error in denying her request to be appointed successor trustee subsequent to the court's removal of Respondent as successor trustee. In her second point, Appellant alleges trial court error in removing Appellant as successor trustee without a hearing, contrary to both statutory procedures as well as established case law procedure attendant to the court's exercise of its inherent equitable powers. Both points are interrelated and will be discussed conjunctively.

In February of 1990, Pauline Babcock ("Ms.Babcock") executed the Trust and named herself as trustee. At that time, the assets of the Trust included 136 head of cattle, a 310 acre farm where Ms. Babcock lived, various pieces of farm equipment, two vehicles, several bank accounts, and other personal belongings. The provisions of the Trust provided that upon Ms. Babcock's death, Respondent would receive all livestock and a ten year estate in the farm. After ten years, the farm and all other property would be vested in Appellant, Respondent, and Evelyn Nadine Duncan as tenants in common .[2] In anticipation of her death, Ms. Babcock set out in Article 4 of the Trust:

> Upon the death, resignation, or mental or physical incapacity of the original Trustee herein designated, then my grandson, Brett Jerome Duncan, is hereby appointed as Trustee; and thereafter, in the event of the death, resignation, or refusal of Brett Jerome Duncan to act as Trustee, or the mental or physical incapacity of Brett Jerome Duncan, then my daughter, Ellen Latrell Williams, is hereby appointed as Trustee.

Upon Ms. Babcock's death on February 28, 1999, Respondent became successor trustee. On October 16, 2000, Appellant filed a "Motion to Remove Trustee or, in the Alternative, to Require Trustee to give Bond." In her prayer, Appellant also asked that she be appointed [successor] trustee, "pursuant to the terms of the trust...." After a hearing, the court entered judgment removing Respondent as successor trustee of the trust. However, the court also denied Appellant's prayer to be named successor trustee. In so ruling, the

---

1. Appellant's "Motion to Dismiss or to Strike Respondent's Amended Brief and Certification" is denied.

2. Appellant and Evelyn Duncan are daughters of Ms. Babcock. Respondent is Evelyn Duncan's son.

court held that Appellant had "a conflict" and "the original trust document and its' [sic] amendment do not require the appointment of [Appellant] as successor trustee if [Respondent] is removed as trustee by a Court of lawful jurisdiction."

■ In review, this Court must affirm the court's ruling "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously applies or declares the law." *In re Nelson*, 926 S.W.2d 707, 709 (Mo.App. 1996); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ "The creator of a trust has the right to appoint his [or her] own trustees, and may provide for the appointment of a successor or successors to the trustee on such terms as he [or she] chooses to impose." 90 C.J.S. *Trusts* § 212 (1955); *see In re Beauchamp's Estate*, 184 S.W.2d 729, 734 (Mo.App.1945); *Riggs v. Moise*, 344 Mo. 177, 128 S.W.2d 632, 634 (1939). In construing trusts and wills, Missouri courts generally apply the same rules. *Mercantile Trust Co., N.A. v. Hardie*, 39 S.W.3d 907, 910 (Mo.App.2001); *In re Nelson*, 926 S.W.2d at 709. These basic rules have remained unchanged over the years and include the following:

> The controlling rule in construing wills or trusts in this state, to which all technical rules of construction must give way, is to give effect to the true intent and meaning of the testator or grantor as the same may be gathered from the whole instrument, if not violative of some established rule of law; and in arriving at that intention the relation of the testator or grantor to the beneficiaries named in the will or trust and the circumstances surrounding him at the time of its execution are to be taken into consideration, and the will or trust read as near as may be from his standpoint, giving effect, if possible, to every clause and portion of it, and to this end, if need be, words may be supplied and omitted, and sentences transposed.

■ *Mercantile*, 39 S.W.3d at 910 (quoting *Grace v. Perry*, 197 Mo. 550, 95 S.W. 875, 877 (Mo.1906)). "[T]he paramount rule of construction in determining the meaning of a trust provision is that the grantor's intent is controlling." *Theodore Short Trust v. Fuller*, 7 S.W.3d 482, 487–88 (Mo.App.1999).

Appellant argues that the trial court's refusal to appoint Appellant successor trustee amounts to an "overly literal reading of Article 4" of the Trust and interferes with Ms. Babcock's intent to install Appellant as successor trustee. Appellant further argues that the omission of "judicial removal" as a reason for Respondent's inability to continue as trustee should be regarded as an "oversight" and that Ms. Babcock's intent was for Appellant to succeed Respondent as successor trustee regardless of the reason which created the vacancy. Respondent argues, in turn, that Ms. Babcock did not provide for a successor trustee in the event of a *judicial removal* and that if she intended to do so she could have provided that provision in the Trust itself.

Looking again to the language in the Trust we note, "and thereafter, in the event of the *death, resignation, or refusal* of Brett Jerome Duncan to act as Trustee, or the *mental or physical incapacity* of Brett Jerome Duncan, then my daughter, [Appellant] Ellen Latrell Williams, is hereby appointed as Trustee." (Emphasis added.)

■ The word "refusal" has dual meanings. Among its various meanings, Black's Law Dictionary defines the word "refusal" as also including "the omission to comply with some requirement of law, as the result of a positive intention to disobey."

Black's Law Dictionary 1282 (6thed.1990). Here, it stands to reason that in appointing Respondent as successor trustee the grantor expected him to fulfill his fiduciary obligations as a named trustee. The fact that he did not fulfill his fiduciary obligations—as the court so determined—constituted a "refusal" on Respondent's part to carry out his duties as trustee, thereby mandating his removal pursuant to the terms of the trust. This is logically consistent with the grantor's intentions and the grantor's intent is controlling. *Short Trust*, 7 S.W.3d at 488.

Additionally, once Respondent was removed as trustee by the court, Appellant, as an expressly named successor trustee per the terms of the trust instrument assumed the position of successor trustee by operation of law. *Riggs*, 128 S.W.2d at 634; *See McCallister v. Ross*, 155 Mo. 87, 55 S.W. 1027, 1028 (1900). "The court cannot 'prevent or promote the transmission and vesting of the title of estates devised in trust, in those who are named trustees.' " *Riggs*, 128 S.W.2d at 635 (quoting *Parker v. Sears*, 117 Mass. 513 (1875)). "No procedure in any court for the confirmation of the appointment of a trustee so named is compelled in Missouri, as it is in some states, as a condition precedent to a trustee entering upon the performance of his duties." *In re Beauchamp's*, 184 S.W.2d at 734. "A testator may appoint the person of his choice as trustee. Such person takes under authority of the will and without necessity of notice to or permission from anyone, and not by reason of appointment or confirmation of court." *In re Jackson's Will*, 291 S.W.2d 214, 222 (Mo.App.1956).

We observe that a named trustee or successor trustee may be removed pursuant to the provisions of section 456.190–210 and section 472.300.[3] Additionally, a court of equity has the inherent power to "exercise jurisdiction over trust estates, to supervise their administration, and to make all orders necessary for their preservation and conservation...." *Riggs*, 128 S.W.2d at 634. However, while there is "no question, of course, as to such inherent jurisdiction of a court of equity ... it has been ruled in this State that although the court has such abstract jurisdiction inherently, it can acquire jurisdiction in the concrete in a particular instance only when it is presented to the court as prescribed by law." *Id.* at 634–35; *In re Beauchamp's*, 184 S.W.2d at 734. "The courts cannot, ex mero motu, set themselves in motion, nor have they power to decide questions except such as are presented by the parties in their pleadings." *Riggs*, 128 S.W.2d at 635; *see Powers v. Johnson*, 306 S.W.2d 616, 622 (Mo.App.1957)("We are cognizant of the general rule that a court of equity may not order the removal of a trustee unless some kind of a petition for his removal is filed."); 90 C.J.S. *Trusts* § 234. In the exercise of this authority, we have observed that it is "fundamental to our common-law sense of justice and fair play and it is also embedded in our constitutions that a litigant party shall have opportunity to be heard on matters which affect his interests." *In re Jackson's Will*, 291 S.W.2d at 225.

We observe further that the "appointment of a successor presupposes that a vacancy exists." *Id.* at 223. Because Appellant, as successor trustee, assumed her position by operation of law, *see id.* at 222–23; 90 C.J.S. *Trusts* § 212, only an express motion or petition filed by an interested party, and which expressly sought her removal, would have invoked the court's judicial authority to consider her removal. *See In re Jackson's Will*,

3. All statutory references are to RSMo 2000, unless otherwise set out.

291 S.W.2d at 223; *Riggs,* 128 S.W.2d at 635. The record in this case is devoid of such a motion or petition.

While we note that in her motion Appellant *prayed* for the removal of Respondent as trustee and requested that, pursuant to the terms of the Trust, she be appointed as trustee in his place and stead; given the pleadings and facts of this case such prayer was ineffective to set in motion the process for *Appellant's* removal. "A prayer is not strictly a part of the pleadings and does not bind a court of equity." *Niederkorn v. Niederkorn,* 616 S.W.2d 529, 533 (Mo.App.1981). Here, no motion or petition was filed by any interested party seeking *Appellant's* removal as successor trustee. We find no factual assertions against *Appellant* that suggested that she should have been removed as a successor trustee. Indeed the record is devoid of any pleadings filed by Respondent seeking Appellant's removal as successor trustee. "The powers of a court of equity, though broad, are limited to the claim for relief and issues made by the pleadings." *Matter of Heisserer,* 797 S.W.2d 864, 873 (Mo.App.1990). The motion and its concomitant pleadings were directed exclusively to the removal of Respondent based primarily on alleged acts constituting a breach of his fiduciary obligation to the Trust and its beneficiaries.

Further, it is our view that Appellant's prayer contained in her motion to remove Respondent as trustee was surplusage given that Appellant would have, in either event, assumed the duties of successor trustee by operation of law once Respondent was removed for any reason cogniza-

ble by the trust instrument. *See discussion, supra.*[4]

Assuming, *arguendo,* that under the pleadings the court could have considered the matter of the removal of Appellant as successor trustee, we, nevertheless, conclude that the court's determination that Appellant had "a conflict," such as to prevent her from serving as successor trustee, was not supported by the record.

"The power of the court to remove a trustee should be used sparingly, and before it is exercised, there should be such misconduct as to evidence of want of capacity or fidelity, which has, or might likely, put the trust in jeopardy." *Guirl v. Guirl,* 708 S.W.2d 239, 244 (Mo.App.1986). "Mere hostility between trustees and cestuis is insufficient in law to require the removal of trustees." *Shelton v. McHaney,* 343 Mo. 119, 119 S.W.2d 951, 961 (1938); *Webb v. St. Louis County Nat. Bank,* 551 S.W.2d 869, 883 (Mo.App.1977). At the very least such hostility must be coupled with other conduct in order to justify removal. *Whan v. Whan,* 542 S.W.2d 7, 12 (Mo.App.1976). "The removal of a trustee calls for the exercise of a sound judicial discretion, which should not be abused." *Shelton,* 119 S.W.2d at 954.

Appellant never testified during the course of the hearing. There was brief testimony by Respondent where Respondent informed the court that Appellant had sought copies of checking accounts from 1990 forward, which were not provided her by Respondent. Respondent also related discussions he had had with Appellant's husband in the presence of Appellant with a view to settling their differences. In this

---

4. *See also Powers,* 306 S.W.2d at 622. *Powers* is distinguished factually from the instant case, however. While the *Powers* court determined that the "question of the conduct of the individual defendants was sufficiently raised notwithstanding the prayer for relief did not contain a request for removal [as trustees],"

*id.,* it is clear that the pleadings also set out factual reasons for their removal, to-wit: "schemed, manipulated, transferred and fraudulently conspired ... failed to account for the perpetual care fund and ... improperly diverted funds." *Id.* at 623.

regard, Respondent primarily testified to remarks made by Appellant's *husband* regarding Respondent's purported illegal and improper handling of trust assets; Appellant's and Appellant's husband's desire that Respondent pay Appellant what was ostensibly owed her by Respondent; and Appellant's husband's threats to report Respondent to the IRS. Other than the foregoing, no evidence was produced showing that Appellant had engaged in any unlawful conduct relative to the Trust and its assets, nor was any significant evidence elicited that would call into question Appellant's capacity or fidelity to the Trust and its assets were she to assume the duties as successor trustee. Accordingly, the court erred as a matter of law and the court's judgment was not supported by substantial evidence in either event. *Murphy,* 536 S.W.2d at 32. The court abused its discretion in preventing Appellant from exercising her duties as successor trustee and in appointing the public administrator of Iron County in her stead. *Shelton,* 119 S.W.2d at 954. Appellants' points are well taken.

That part of the judgment determining that Appellant was not entitled to succeed to the position of successor trustee is set aside. The order appointing Sandra Trask, the Public Administrator of Iron County to the position of successor trustee is set aside. Appellant is entitled to be recognized by the court as successor trustee per the terms of the Trust, subject, however, to such further directions and orders as the court may impose per its announced and retained authority to oversee the successor trustee activities relating to the Trust's assets. In all other respects the judgment of the court is affirmed.

SHRUM, P.J. and MONTGOMERY, J.